JOHN C. HOADLEY *vs.* COUNTY COMMISSIONERS OF ESSEX.

Persons associating themselves to hold property and carry on business, without receiving
an act of incorporation or organizing as a corporation under the general laws, are not
taxable as shareholders in a corporation, but as partners; although their articles of asso-
ciation enable each of them to sell and transfer his interest in the property and business
and thus introduce a new partner, and provide other forms of managing the business
similar to those usual with corporations.

The property of a partner in a firm is not taxable to him in the place of his residence, upon
its market value, although by agreement between the members of the firm the share or
interest of each of them in it is transferable at his pleasure.

PETITION for a writ of *certiorari* to quash proceedings of the
county commissioners refusing to abate a tax assessed on the peti-
tioner in 1869, by the assessors of Lawrence, where he resided.
Hearing by *Ames*, J., who reported the case as follows, for the
determination of the full court:

" It was proved or admitted that Hoadley was an inhabitant
of Lawrence on May 1, 1869, and duly made and filed with its
assessors a sworn list of his estate liable to taxation, including
therein the shares in the McKay Sewing Machine Association
hereinafter referred to, but claiming in reference to them that he

was not liable to be taxed; that the assessors did include the shares in their valuation of his personal property, and valued the same at $68,000, being at the rate of $40 per share, and assessed a tax thereon amounting to $918, which he was subsequently compelled to pay, protesting against his liability therefor; and that immediately after the assessment he duly applied to the assessors for an abatement thereof, which application they dismissed, and thereupon he made application to the county commissioners for an abatement of the tax, as set forth in his petition in this case, and the commissioners, on February 4, 1870, refused to abate the tax, and dismissed his application with costs.

"It was also proved or admitted that Hoadley on said May 1 owned 1700 shares or parts in the McKay Sewing Machine Association, and that they were of the value of $68,000, that is to say, of $40 per share, after deducting the real and personal estate upon which the association paid taxes in Lawrence; and the only question at issue was, whether by law said shares or interest were liable to taxation, and if so, to what extent, the facts being as follows:" [Here followed in the report a statement of which the following is the substance.]

Previously to May 10, 1866, Gordon McKay had acquired, by invention, assignment or license, interests in letters patent of the United States for improvements in machinery for sewing the soles of boots and shoes to the vamps, and been carrying on the business of manufacturing machines under these letters patent, and licensing shoemakers to use them. From the proceeds of the business, he had purchased land in Lawrence, and built a machine shop on it for the manufacture of such machines, and accumulated some personal property. The legal title in the business, and in all the property, both real and personal, including the interests in the letters patent, was in himself; but other persons were equitably interested, in various proportions.

On May 10, 1866, McKay executed an instrument under seal, in which, after reciting the foregoing facts, he declared that he had held, and should continue to hold, the business and property in trust for the benefit of all persons who were or might become interested therein, upon eight articles or conditions.

The first article was, that all persons interested, accepting the declaration of trust and a certificate in a form subjoined, as evidence of their title to such interests, should " constitute and be an association, which shall be called and known as the McKay Sewing Machine Association, but no member of the association or party in interest in its property or business shall have any right or authority whatever to make any contract or bargain, or receive any money, or transact any business whatever, in behalf of or binding on the association, or any member thereof, except as he shall be specially authorized by or under the provisions of this declaration of trust."

The second article provided that the association should continue for thirty years from May 10, 1866, unless dissolved in the manner provided in the seventh article; and that " the death of any member thereof during said term shall not operate as a dissolution of said association, nor shall it have any effect upon the same, or its operations or mode of business, except that the person or persons who shall become the lawful owner or owners of the interest of said decedent shall succeed to all the rights of said decedent under this certificate, and upon the surrender thereof shall receive a certificate or certificates similar to this, according to their respective interests."

The third article provided that the association should be the equitable owner of the property and business, and the beneficial results and products thereof; that the same should be divided into 50,000 shares, to be distributed among the members of the association proportionally to their interests; that " certificates showing how many of said shares he is entitled to shall be issued to each member of said association, which certificates and the interests they represent shall be transferable, by assignment in writing upon the certificate and surrender of the same to the trustee, whereupon he shall issue a new certificate or certificates according to the interests of the parties; " and that the trustee should keep a record of certificates issued or surrendered, and none but those appearing thereby to be holders of certificates should be entitled to dividends, or to vote at any meeting of the shareholders.

The fourth article stipulated that the general management of the business in the future should be vested in an executive com-. mittee of not less than three nor more than five shareholders, to be chosen by the whole body of shareholders at a meeting called by the trustee for the purpose, and to serve till others should be chosen in their stead ; and that a majority of the committee should constitute a quorum, and decide in all matters over which the committee had control.

The fifth article provided that upon the execution of this declaration of trust the trustee should notify to all the parties known to him to be interested in the property and business to meet to organize the association, choose the executive committee, adopt by-laws, and transact any other needful business.

The sixth article provided that the executive committee should divide the profits of the business among the shareholders, according to their several interests.

The seventh article provided that " whenever a majority in interest shall, at a meeting duly called for that purpose, vote to transfer the property and business of the association, or any portion thereof, to a corporation legally authorized to receive and hold the same, or to any other party or person, the trustee shall convey and transfer the same free and discharged of this trust, and thereafter no member of this association shall have any claim to or right in said property, patents and business, or the beneficial results thereafter accruing from the property and patents so sold and transferred, except as he may be a stockholder in such corporation or otherwise interested in the purchase ; and the proceeds of such sale shall, after all debts and liabilities of the association and business are paid, be divided among the members according to their respective interests, and upon such division, sale and transfer, if no further property remains in said trustee, this association shall be dissolved."

The eighth article made provision for the choice of a new trustee by the shareholders, in event of the death, resignation or disability of McKay.

The form of certificate subjoined to the declaration of trust was provided to be signed by the trustee, and to certify that

"          is the owner of          shares in the property of the McKay Sewing Machine Association, to be held and enjoyed by him, with all the rights and privileges, and subject to all the conditions and restrictions set forth in the declaration of trust executed by Gordon McKay on the 10th day of May 1866, and recorded in the registry of deeds at Salem, Massachusetts, and a copy of which is printed on the back of this certificate; these shares are transferable by an assignment in writing on this certificate and the surrender of this certificate to the trustee, when new certificates shall be issued according to the transfer."

Upon the execution of this instrument by McKay, all the persons then interested in the property or business signed an agreement in the following terms, and received from McKay certificates in the form above given: "In consideration that the said Gordon McKay has agreed and does hereby bind himself and agree to deliver to each and every party, having an interest in the property set forth in the foregoing certificate and declaration of trust, a certificate and declaration similar to the foregoing, expressing the several interests of each party, in case all of the persons interested in said property shall sign this agreement we do hereby severally bind ourselves and agree to receive from said McKay such certificate and declaration of trust, as the sole evidence of our respective interests in the above described property, and, upon the receipt thereof, any other certificate or evidence of title which we may hold to said property shall become cancelled and void, and the same shall be surrendered to him, the said McKay."

After the execution of the papers, and issue of the certificates, the shareholders, on May 28, 1866, held the meeting provided for by the fifth article of the declaration of trust, and chose an executive committee, and adopted by-laws for the regulation of the business of the association. [A copy of the by-laws was annexed to the report.]

"Since said date the business of said association has been conducted by its executive committee under the provisions of said declaration and by-laws, McKay holding the legal title of all its property, as trustee, under said declaration, the title of the property never having passed from him. The place of business of the

association is and always has been in Boston ; and no member of its executive committee, nor its trustee and general agent, has resided in Lawrence. Except its machine shop in Lawrence, and the tools and machinery connected therewith, the property of the association consists chiefly of its interest in the letters patent. Its income is chiefly derived from license fees received from licensees of its machines ; and the net amount of this income is divided from time to time, generally quarterly, among its members, in proportion to their respective shares or interests. Its machines are all leased, [under a form of lease given in the report,] the legal title of them remaining in McKay as trustee. Many of them are distributed throughout the country, in the hands of lessees ; and they are not taxed either in Lawrence or Boston to McKay or the association. Whenever a member sells his shares or any of them, new certificates are issued to the purchaser, in similar form, and such purchasers thereupon become members of the association. Said shares are frequently sold, and such sales reported, at auction sales in Boston ; and are subject of transfer upon assignment of certificate of shares, as set forth in said certificate, and upon such assignment the assignee is entitled to receive new certificates, and to demand and receive of the association his proportionate share of the net profits of the association under said declaration and by-laws. Such shares are held, by the person holding certificates thereof, free from the control of any other person, and are subject to no restrictions or conditions whatever, except such as are set forth in said certificate and declaration of trust. In 1869, as well as in previous years, the association was taxed for its real estate and machinery in Lawrence, and the tax was duly paid. It was also taxed in Boston in 1869, and in previous years, for its personal property, held by McKay as trustee as aforesaid, (having no real estate there,) and said taxes have been duly paid. The valuation did not include the interest in the letters patent, it being claimed by the trustee, in behalf of the association, that letters patent of the United States were not subject to taxation. The association was taxed in Boston in said year for personal property ; the amount of tax being $215.09."

*E. Merwin*, for the petitioner.

*D. Saunders*, for the respondents. 1. The petitioner has valuable personal property represented by certificates of shares in the McKay Sewing Machine Association, which certificates entitle the holder to a proportional share of the net earnings of the association; contain a promise to pay these earnings, which he can enforce at law if they are withheld from him; are subject to transfer by him, such transfer, like that of a negotiable promise to pay money, entitling the transferee to demand and receive a like proportional share of the profits of the association; have a market value; can be sold or pledged like any other personal property; and are as much personal property as a promissory note or a money bond. They are effects and chattels, taxable under the Gen. Sts. *c.* 11, § 4.

2. The association is not a partnership. Although there may be an equitable community of interest, between the shareholders, in its property and profits, yet this does not make them partners, any more than a community of interest in a vessel and her earnings makes her part owners partners. A partner is agent for all the other partners in the business, and can contract for the firm. But the petitioner has no authority to interfere with the business of this association. No third person can be introduced into a firm as a partner, without concurrence of all the partners. An executor even does not succeed to his testator's membership of a firm. But every member of this association has power to make as many new members of it as he has shares, without consulting any other member. The shareholders surely are not partners *inter sese*, for by the very terms of the certificate, the only evidence of their interest, they are prohibited from using or enjoying any power of partners. If as between themselves they are not partners, third persons are not obliged to treat them as such, and no error has been committed by the respondents in treating the shares as personal property for which the petitioner should be assessed personally. Having assumed to exercise the usual powers of a corporation, they may for the purposes of taxation be treated as members of a corporation. *Oliver* v. *Liverpool & London Insurance Co.* 100 Mass. 531.

3. The fact that McKay holds the property of the association in trust, and that it is taxed to him, is immaterial. He does not hold the petitioner's shares in trust.

MORTON, J. The only question presented in this case is, whether the petitioner is liable to be taxed in Lawrence for the shares in the McKay Sewing Machine Association owned by him. This question must be decided by the construction of the statutes regulating taxation, and not upon any considerations of supposed policy or equity ; and we are unable to find any provision of statute which makes such shares taxable.

The McKay Sewing Machine Association is not a corporation. It has never received an act of incorporation, nor been organized as a corporation under the general laws. A corporation can only be created and exist by sanction of the legislature. This is a voluntary association of individuals, and its articles of agreement, although they adopt some of the forms of managing the business usual in corporations, constitute a copartnership. It cannot sue and be sued as a corporation ; its members are individually liable for its debts ; and it has none of the special attributes which belong to a corporation duly organized under our laws. *Oliver* v. *Liverpool & London Insurance Co.* 100 Mass. 531. *Tyrrell* v. *Washburn,* 6 Allen, 466. The provision that each member may sell and transfer his interest, and thus introduce a new partner, though unusual, is not inconsistent with the contract of copartnership.

It is clear, therefore, that shares in this association could not be taxed under the Gen. Sts. *c.* 11, § 4, as "stocks in a moneyed corporation," even if any such stocks could be taxed to the owners since the passage of the St. of 1865, *c.* 283. Being a copartnership, the laws applicable to that relation must govern its rights and liabilities ; and it follows that the personal property held by it was properly taxable in Boston, where its business is carried on, and not in Lawrence. Gen. Sts. *c.* 11, § 15. *Little* v. *Cambridge,* 9 Cush. 298. The petitioner, therefore, was not taxable in Lawrence for his interest in the personal property of the firm.

But the tax in question was assessed upon the market value of his shares, treating them as so many shares of corporate stock. No provisions of statute, or authorities, are cited, by which such a tax can be upheld. The property of each partner in a firm is an undivided interest in all the assets as a tenant in common. For that interest, if the firm is established in this state, he is taxable in the town which is the business domicil of the firm ; if it carries on business in another state, he is taxable at his place of residence. *Bemis* v. *Aldermen of Boston*, 14 Allen, 366. He has no other interest in the firm which is subject to taxation. The fact that, by agreement between the partners, in this case, the share or interest of each partner in the firm is transferable, does not make it taxable specifically. If such shares have a market value larger than the amount of property held by the firm, it is a speculative value, founded upon the expectation of future profits, and is not property which is taxable under our laws.

The argument of the respondents, that these shares are as much property as stock in corporations, and therefore ought to be taxed, is fallacious, because it necessarily results in double taxation of the same property. Formerly stock in corporations was taxable to the shareholders in the places of their residence, because the corporations were not taxed for any of their personal property except machinery employed in manufactories. To guard against double taxation, the tax acts required assessors to deduct from the value of the shares the value of all property, real or personal, which was taxed directly to the corporation ; and when an equivalent tax or excise was imposed directly upon corporations, the stock of shareholders was exempted from local taxation. St. 1864, *c.* 208. St. 1865, *c.* 283. If this tax is upheld, the property of the petitioner is subjected to double taxation ; once in the business domicil of the firm, and once in the town where he resides.

We are therefore of opinion that the tax assessed by the city of Lawrence upon the petitioner was illegal. We have not deemed it necessary to consider what is the effect of the fact that the legal title to the property of the association is by the articles of agreement vested in McKay as trustee. This fact cannot make

the case more favorable for the respondents, because, if the prop-erty is to be regarded as property held in trust under the Gen. Sts. *c.* 11, § 12, *cl.* 5, it is clear that it is taxable to the trustee, and not to the petitioner.  *Writ of certiorari to issue.*