## WILLIAM H. PHILLIPS *vs.* JOHN S. BLATCHFORD, executor.

Suffolk.    March 20. — Sept. 5, 1884.    DEVENS & COLBURN, JJ., absent.

A partnership formed in this Commonwealth with transferable shares is legal.

A partnership, with a capital stock divided into shares for which certificates were issued, was formed under a declaration of trust, containing the following provision : " The decease of a member of the association shall not work a dissolution of it, nor shall it entitle his legal representatives to an account, or to take any action in the courts or otherwise, against the association or the trustee, for such; but they shall simply succeed to the right of the deceased to the certificate and the shares it represents, subject to this declaration of trust." *Held*, that the estate of a shareholder was liable to contribute to the other partners for the payment of debts incurred after his decease, and before his executor had done any act by which he became a partner in the testator's place.

A partnership was formed under a declaration of trust, by the terms of which no member of it had, as such, any control over the business, except through a board of managers. A debt was incurred by the partnership, which one member paid, after he and the other members were sued by the creditor. *Held*, that the cause of action which such member had against the other members for contribution did not accrue before payment.

A debt to a firm composed of A. and B., by a partnership of which A. and C. are members, is not paid by A. by being charged to profit and loss on the books of the firm, so as to give A. a claim for contribution against C.

If one partner pays a debt of the firm, he cannot maintain a bill in equity for contribution against the other partners.

BILL IN EQUITY, filed November 9, 1881, against the surviving executor of the will of Marshall S. Scudder, for contribution. The bill, as amended, alleged the following facts:

On or about June 1, 1874, certain persons entered into a co-partnership styled the Ryder Reciprocal Grate Association, under a declaration of trust, by the terms of which no member, as such, was to have any control over the business of the association, which was to be entirely under the control of a board of managers, of whom the trustee was to be a member, and the other members were to be elected by the shareholders. The stock was to be divided into fifteen hundred shares, and each holder of a share was entitled to a certificate, which might be transferred by an assignment in writing. The following provision was made in case of the death of a member : " The decease of a member of the association shall not work a dissolution of it, nor shall it entitle his legal representatives to an account, or to take any action in the courts or otherwise, against the association or the trustee, for such; but they shall simply succeed to the right of the deceased to the certificate and the shares it represents, subject to this declaration of trust.'

The defendant's testator became the owner of one hundred and twenty-five shares in the association, on or about June 1, 1874, and was such owner at the time of his death, on August 28, 1875. On October 11, 1875, the defendant and John P. Putnam, since deceased, were appointed executors of his will.

The association in the prosecution of its business became indebted to the Taunton Iron Works Company. This indebtedness was incurred partly before and partly after the death of Scudder. On June 18, 1878, the Taunton Iron Works Company brought an action against the plaintiff and other members of the association, to recover the debt. On November 12, 1880, the plaintiff and Sylvanus N. Staples each paid one half of the amount of said claim, which amounted in the whole to the sum of $6934.78. The association also became indebted in the sum of $1625.27 to the firm of Staples and Phillips, which firm was composed of the plaintiff and Sylvanus N. Staples, and on February 28, 1879, said indebtedness was paid by the plaintiff by the account being charged to profit and loss on the books of the firm.

The number of shares in the association held by solvent persons in Massachusetts was one hundred and eighty-nine; and on November 12, 1880, the plaintiff presented a petition to the Probate Court, setting forth the payment by the plaintiff of the claim of the Taunton Iron Works Company, and the liability of Scudder to the plaintiff growing out of such payment; and the Probate Conrt, on December 20, 1880, ordered the executors of the will of said Scudder to retain in their hands the sum of $4000 until the rendering of final judgment in any suit at law or in equity commenced within one year after payment of the claim.

The prayer of the bill was that the defendant be ordered to pay $\frac{125}{189}$ of the claims paid by the plaintiff, and for further relief.

The answer admitted the allegations of fact contained in the bill; alleged that the bill did not set forth any ground for relief in equity; and that the causes of action accrued within two years from the date of the defendant's giving bond as executor, or, if such causes of action accrued after two years, that they accrued more than one year before the commencement of the suit.

The case was heard by *Field,* J., upon the bill and answer, and reserved for the consideration of the full court.

*G. E. Williams & L. L. Scaife,* for the plaintiff.

*J. C. Gray,* ( *W. C. Loring* with him,) for the defendant.

HOLMES, J. It is too late to contend that partnerships with transferable shares are illegal in this Commonwealth. They have been recognized as lawful by the court, from *Alvord* v. *Smith,* 5 Pick. 232, to *Gleason* v. *McKay,* 134 Mass. 419. Even if the question were a new one, we should come to the same result. The grounds upon which they were formerly said to be illegal in England, apart from statute, have been abandoned in modern times. *Walburn* v. *Ingilby,* 1 Myl. & K. 61, 76. *Garrard* v. *Hardey,* 5 Man. & G. 471. *Harrison* v. *Heathorn,* 6 Man. & G. 81, 140. *In re Mexican & South American Co.* 27 Beav. 474, 481; 4 DeG. & J. 320. 1 Lind. Part. (3d ed.) 200–202.

It is suggested by the defendant, that such associations are intended to avoid having a paid-up capital, which would be necessary if a corporation were formed, and to escape taxation.

These new reasons peculiar to this State derive no support from the English decisions invoked, and do not impress us. If a partnership incurs debts, the members are personally liable, and there is no need of a paid-up capital. And an association does not become illegal simply because another very like it is taxed. We perceive no wrong to the public, and as to the shareholders, if they choose to purchase stock in a partnership with unlimited personal liability, it is their own lookout. Courts will not assume to understand the interests of contracting parties better than they do themselves.

We attach equally little weight to the argument that the Bubble Act (St. 6 Geo. I. *c.* 18) was made applicable to America, in 1741, by the St. of 14 Geo. II. *c.* 37, by which, among other things, all offenders against these acts were subjected to the penalties of a *præmunire*, and brokers dealing in the shares therein referred to were made incapable of acting as brokers for the future.

The Constitution continued in force, until altered or repealed, the laws which had been adopted, used, and approved in the Province, Colony, or State, and usually practised on in the courts of law, (Mass. Const. *c.* 6, art. 6,) and it may be true that " some few English statutes, passed since the emigration, were adopted by our courts." *Commonwealth* v. *Knowlton*, 2 Mass. 529, 534. But the fact that, as far back as the records of our judicial decisions extend, this act has not been practised on in the courts, but has been ignored by them, is strong evidence that the act was not among those that were kept in force after the Revolution. *Alvord* v. *Smith, ubi supra. Tappan* v. *Bailey*, 4 Met. 529, 535. *Tyrrell* v. *Washburn*, 6 Allen, 466, 475. *Hoadley* v. *County Commissioners*, 105 Mass. 519, 526. *Bodwell* v. *Eastman*, 106 Mass. 525. *Taft* v. *Ward*, 106 Mass. 518; 111 Mass. 518. *Gott* v. *Dinsmore*, 111 Mass. 45. *Boston & Albany Railroad* v. *Pearson*, 128 Mass. 445. *Gleason* v. *McKay, ubi supra. Frost* v. *Walker*, 60 Maine, 468, 471. In view of the practice and opinion disclosed in these cases, it is not necessary to give more than a word to the absurdity of attempting to enforce the act as a whole, or to the fact that the whole course of our legislation shows the same ignorance of its existence as the decisions, and that the St. of 1878, *c.* 275, clearly assumes such

associations to be lawful. It is also unnecessary to consider whether the cases of *O'Hanlon* v. *Myers*, 10 Rich. 128, and *Hill* v. *Smith*, Morris (Iowa) 70, go farther than we should feel disposed to with regard to obsolete statutes, or whether this association appears to fall within the prohibitions of the act.

It is admitted that the partnership was formed under a declaration of trust, by which it was provided, among other things, as follows: "The decease of a member of the association shall not work a dissolution of it, nor shall it entitle his legal representatives to an account, or to take any action in the courts or otherwise, against the association or the trustee, for such; but they shall simply succeed to the right of the deceased to the certificate and the shares it represents, subject to this declaration of trust."

The main question is whether this provision is broad enough to make the estate of a shareholder liable to contribute to the other partners for debts incurred after his decease, and before the executor has done any act by which he becomes a partner in the testator's place. In the opinion of the majority of the court, the provision has that effect. It may be conceded that, without some act on his part, the executor would not become a partner; and, for the purposes of this case, it may also be conceded that the estate in the executor's hands would not be liable to creditors for such a debt, unless the executor was personally bound. There might be some difficulty in showing how such a new contract could be made with a dead man, and it might be said that our law does not recognize an estate as a *universitas* able to contract, or know any way of binding an executor otherwise than personally by a contract made after the testator's death. See *Labouchere* v. *Tupper*, 11 Moore P. C. 198; *Owen* v. *Delamere*, L. R. 15 Eq. 134.

But a man may contract with his copartners to indemnify them for a certain proportion of liabilities incurred after his death; and, if such liabilities are incurred, his executor will be bound *de bonis testatoris* in the same way that he is by any other contract of his testator, and without introducing any anomalous principle whatever. *Turquand* v. *Kirby*, L. R. 4 Eq. 123, 134. See *Hammond* v. *Granger*, 128 Mass. 272; *Bacon* v. *Pomeroy*, 104 Mass. 577, 582.

Ordinarily, when a partner contracts that his share in the profits shall continue to a certain time, he contracts by implication that his liability for losses shall have the same duration. We see no reason why this principle should not apply when the time extends beyond the partner's life. And when, as here, a company is purposely made as nearly a corporation as possible, and it is obviously intended that the death of a shareholder shall not affect either the company or the rights incident to the share, we think that the liabilities go with the rights, and that the effect of the testator's contract was that he would share losses until his estate was relieved of his shares in the stock. *In re Agriculturist Cattle Ins. Co.* L. R. 5 Ch. 725.

When a partner merely reserves an option to his executor to take his place in the firm, and perhaps even when he covenants that his executor shall take his place, but does no more, the interest of his estate in the profits after his death, and therefore its liability for losses, are dependent upon the executor's personal participation in the business; so that, if the executor declines, the firm will be dissolved by the death, and an account must be taken, although the surviving partner may be entitled to damages. See *Downs* v. *Collins*, 6 Hare, 418.

But the present contrivance goes farther, and, as we have said, is intended to imitate a corporation so far as to stipulate that profits and losses shall follow the certificate, and that the certificate shall remain part of the estate of the deceased, whether the executor makes himself a member of the company or not. " It is very true that an executor cannot become an actual partner in the concern, or be entitled under any new contract to the benefit of it, unless he has accepted the shares and agreed to become a partner, . . . . but the shares are vested in him, and in some sense he is a shareholder, although not in the complete sense, so as to be . . . . liable in his own person to all the subsequent responsibility." *Wills* v. *Murray*, 4 Exch. 843, 868. See also *Fyler* v. *Fyler*, 2 Railw. Cas. 813.

The plaintiff's cause of action in respect of the debt of the Grate Association to the Taunton Iron Works Company accrued upon payment. *Hayward* v. *Hapgood*, 4 Gray, 437. *Thayer* v. *Daniels*, 110 Mass. 345. We do not gather that the plaintiff had either the duty or the right to pay this debt until he was

sued, and see no ground for the defendant's plea that it is barred. On the other hand, the claim based upon the debt of the association to the plaintiff's firm is without foundation. The debt was not paid by being charged off to profit and loss on the books of the firm, even if, as between the plaintiff and his partner, it was converted into separate assets and divided. There is no need, therefore, to consider further objections.

Inasmuch as the plaintiff must recover, if at all, by virtue of. the partnership contract to bear losses, and not by way of subrogation to the debt which he has paid, the bill cannot be maintained, as it now stands, for contribution in respect of a single item. But, in the present state of affairs, the defect seems to be purely formal, and the plaintiff may apply to a single justice for leave to make any amendment he may desire, on such terms as seem proper; otherwise, the bill must be dismissed.                    *Decree accordingly*.