O’Brien, J.
The plaintiff, Federal Deposit Insurance Corporation (FDIC), as the receiver/liquidating agent for Landmark Bank for Savings (the Bank), has brought this action against Ronald A. Porter, as Trustee of L.A. Realty Trust, as well as Ronald A. Porter and his wife, Helen Porter, individually. The FDIC brings this action to recover a two million dollar deficiency resulting from the Bank’s foreclosure sale of a shopping center known as Hyannis Village. Before the foreclosure sale, Hyannis Village was owned by L.A. Realty Trust. Ronald A. Porter has been the sole trustee, and he and Mrs. Porter have been co-beneficiaries of the L.A. Realty Trust since 1978.
The defendants, Mr. and Mrs. Porter, have moved for summary judgment on Count II of the FDIC’s second amended complaint, asserting that they are not personally liable for the deficiency. The FDIC cross moves for summary judgment and states that the Porters, as beneficiaries of a nominee trust, are personally liable for the Trust’s obligations as a matter of law.
FACTUAL BACKGROUND
In June 1989, Mr. Porter, as trustee of LA. Realty Trust, executed a promissory note (the note) to Landmark Bank in the amount of $2,999,000.00. The note and all documents[1] relating to the note were signed by Mr. Porter in the following manner: “Ronald A. Porter, Trustee of LA. Realty Trust and not individually.”
Mr. Conley, senior loan officer and vice-president of the Bank, was responsible for negotiating the loan to L.A. Realty Trust. During negotiations, Mr. Conley asked Mr. Porter to provide the Bank with a personal guaranty. Mr. Porter continually refused. The Bank then agreed to accept a $120,000 certificate of deposit as additional security. Mr. Porter also subordinated a $735,000.00 mortgage that he personally held on Hyannis Village.
In August 1990, the terms of the original loan were modified. Mr. Porter again signed the modification agreement “as Trustee of L.A. Realty and not individually.” Sometime in June of 1991, L.A. Realty Trust defaulted on the note. In October 1991, the Bank sent three demand letters for payment to the Porters, one to Mr. Porter as trustee for L.A. Really, one to him individually and one to Mrs. Porter, individually. The Porters responded by sending their own demand letter in accordance with G.L. c. 93A.
Thereafter, Mr. Conley met with the Porters’ attorney, Aaron Bikofsky. At this meeting, there was some discussion regarding the Bank’s understanding of the Porters’ individual liability on the note. Both parties have very different recollections of what was said during this meeting.[2]
PROCEDURAL BACKGROUND
In November 1991, the Bank filed a lawsuit against Mr. and Mrs. Porter, individually, and against Mr. Porter as Trustee of L.A. Really Trust. This court then denied the Bank’s motion seeking to attach the real properly of Mr. and Mrs. Porter and a motion for a preliminary injunction to enjoin them from transferring any personally held assets. (Plymouth Superior Court November 21, 1991). Thereafter, the Porters were voluntarily dismissed without prejudice.
On March 6,1992, through foreclosure by deed, the Bank received Hyannis Village. The proceeds received at the foreclosure were deficient to cover the note by approximately two million dollars.
The FDIC was appointed receiver/liquidating agent for the Bank in June 1992. The complaint was allowed to be amended on January 25, 1993, to again include Mr. and Mrs. Porter as individual defendants. This court heard argument on several motions, including argument concerning the parties’ cross-motions for summary judgment. This court finds as follows.
DISCUSSION
I. FDIC’s Motion to Strike
The FDIC has moved this court to strike (1) the opposition of defendant Ronald A. Porter, Trustee, to plaintiffs cross-motion for summary judgment, and (2) the opposition of defendants Ronald and Helen Porter, Individually, to plaintiffs cross-motion for summary judgment[3] contending the defendants failed to submit these documents within the time permitted by Superior Court Rule 9A without the FDIC’s consent or the leave of the court.[4]
Although the defendants did not strictly adhere to the provisions of Rule 9A,[5] this court considers the above documents in order to properly decide the cross-motions for summary judgment.
II. FDIC’s Motion to File Additional Papers
The FDIC has also moved to allow the filing of seven exhibits which specifically respond to the defendants’ assertions that the notice requirements of G.L. c. 244, § 17B, were not complied with in the Hyannis foreclosure. The FDIC will be permitted to file the exhibits, despite the defendants’ objection, as this court finds that the papers are records which were kept within the normal course of business and are, therefore, admissible.
II. Porters’ Cross-Motion to Strike
The defendants, Mr. and Mrs. Porter, have moved to strike certain affidavits and documents which were submitted by the FDIC in relation to the cross-motions for summary judgment. The defendants contend that certain affidavits and various documents have either been submitted in bad faith under Mass.R.Civ.P. 56(g) or contain inadmissible testimony or evidence pursuant to Mass.R.Civ.P. 56(e).
This court has done a thorough investigation of each affidavit and document challenged by the defendants and is not satisfied that any was made in bad faith or solely for the purpose of delay. This court similarly does not agree that certain sections of affidavits and certain documents are inadmissible.[6]
*568 IV. Cross-Motions for Summary Judgment
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts, or if only a question of law is involved, summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, supra.
A.Notice Provisions of G.L. 244, §17B
In their respective oppositions to the FDIC’s cross-motion for summary judgment, Mr. Porter, as trustee for L.A. Realty and Mr. and Mrs. Porter as beneficiaries of the L.A. Realty Trust, assert that the Bank and the FDIC did not comply with the provisions of the Massachusetts Mortgage Deficiency Statute, G.L. c. 244, §17B.[7] Neither defendant, however, has submitted to this court affidavits which state that such notice was not received.[8] When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial." Mass.R.Civ.P. 56(e). This argument is accordingly rejected.[9]
B.L.A. Realty Trust is a Nominee Trust
“Where there is a parallel identity of trusteeship and ownership in connection with the holding of title to real estate by trustees, it may be inferred that the trust vehicle is a ‘nominee trust,’ a common device for holding title to real estate in Massachusetts and one which affords certain tax advantages.” Apahouse Lock & Security Corp. v. Carvelli, 26 Mass.App.Ct. 385, 388 (1988) (citations omitted) (protection from personal liability of trustee under G.L. c. 203, §14A does not encompass the case of trustees who are trustees of a nominee trust). In a nominee trust, “trustees are frequently seen as agents for the principals’ convenience rather than as trustees in the more familiar fiduciary sense.” Id., citing Williams v. Milton, 215 Mass. 1, 6 (1913).
L.A. Realty Trust is a nominee trust.[10] Mr. Porter is the Trustee, and he and his wife are co-beneficiaries. North Shore Protective Patrol and Detective Agency, Inc. v. Baldwin, 1991 Mass.App. Dec. 61, 64 (beneficial ownership in family members of trustee does not alone “render inapposite the Apahouser rule”).
The nominee trust is so-called because, although the trustee has legal title, the equitable title is in the beneficiaries who are the principals with complete control over their nominees, the trust. Numerous provisions of the Declaration of Trust, which created L.A. Realty Trust, support the fact that the beneficiaries of L.A. Realty had control over the trustee. For instance, in paragraph 2, the Declaration states: “(T]he Trustee shall have no power to deal in or with the Trust estate except as directed by the beneficiaries.” Paragraph 3 states: ‘The trust may be terminated at any time by the beneficiaries acting unanimously by notice in writing to the Trustees . . .” Similarly, Paragraph 4 states: “Succeeding or additional trustees may be appointed or any Trustee removed by an instrument or instruments in writing signed by the beneficiaries and acknowledged by one or more of them . . . This Declaration of Trust may be amended from time to time by an instrument in writing signed by the then Trustee or Trustees hereunder and by the beneficiaries and acknowledged by the beneficiaries ...”
C.The Porters are Individually Liable as Beneficiaries of a Nominee Trust
There are a number of cases in which the court has simply ignored the existence of the trust where the trust instrument contained a nominee provision, and has imposed liability directly on the beneficial owners. See Frost v. Thompson, 219 Mass. 361 (1912); First National Bank of New Bedford v. Chartier, 305 Mass. 316 (1940).
It is, however, the Porters’ contention that the signature on the note limits their personal liability. This court does not agree. A trustee of a nominee trust can always sign documents “as trustee” and no harm is done by adding “and not individually.” See Ballentine v. Eaton, 297 Mass. 390, 391 (1937) (citations omitted) (a signature of trustees followed by the language, “as trustee but not individually,” binds the trust res but not the trustees personalty). Although Mr. Porter’s signature arguably limited his liability as trustee, it did not limit the liability of the beneficiaries of the trust.[11]
There is nothing in the note which would lead this court to the conclusion that the beneficiaries had limited liability. There was no contractual provision exempting Mr. and Mrs. Porter from personal liability as beneficiaries. The note did not contain any provision which explicitly restricted the Bank to the trust property for payment. Therefore, this court finds the contract signed by Mr. Porter “as trustee of L.A. Really and not individually” does not preclude the FDIC from pursuing the Porters as beneficiaries. See Neville v. Gifford, 242 Mass. 124, 127-28 (1922) (finding that the trust agreement should be treated as a partnership where trustees took title as trustees but were the only beneficiaries of the trust).
In addition, the legal effect of the contract in question cannot be affected by the undisclosed intention of Mr. Porter not to bind himself or his wife personalty. Id. at 128, citing Bray v. Kettell, 1 Allen 80. See also *569 In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332 (1st Cir. 1992) (barring affirmative claims against the FDIC, as well as defenses which are premised upon secret agreements that sound in contract; proper focus is whether the agreement, at time it was entered, would tend to mislead public authority). Id. at 1344, citing D’Oench, Duhme & Co. v. FDIC, 315 U. S. 447 (1942); TimberlandDesign, 932 F.2d at 45-50 (1st Cir. 1991).
ORDER
For the foregoing reasons, it is hereby ORDERED:
1. Plaintiffs motion to strike be DENIED; 2. Plaintiffs motion to file additional papers be ALLOWED; 3. Defendants Ronald Porter, Individually, and Helen Porter’s cross-motion to strike be DENIED; 4. Defendants Ronald Porter, Individually, and Helen Porter’s motion for summary judgment be DENIED; 5. Plaintiffs cross-motion for summary judgment be ALLOWED, as to liability. Damages to be the subject of an evidentiary hearing.

 In connection with the Note, Mr. Porter executed a mortgage and security agreement, a conditional assignment of rents, and a collateral assignment of lease.

 Peter Conley’s affidavit states in paragraph 4: “I have never made any representations, orally or in writing, that the Bank would not hold the Porters, as beneficiaries, personally liable on the Note.” Aaron Bikofsky’s affidavit, dated November 15, 1991, in paragraph 4 states: “Mr. Conley realized that Landmark [the Bank] had no "leverage" and had agreed that there would be no personal liability on Mr. Porter’s behalf or on behalf of his wife."

 In the same motion, the FDIC asked this court to strike a third motion, the defendant’s motion for leave to file additional papers in support of defendants’ cross-motion to strike. On November 18, 1993, that motion was allowed.

 On March 30, 1993, the defendants served the FDIC with a motion for summary judgment. On April 26, 1993, the FDIC served the Porters with an opposition to that motion, as well as a cross-motion and memorandum for summary judgment in compliance with 9A(b)(2) and 9A(3). It was not until June 8, 1993, when the defendants served on the FDIC a binder containing copies of everything submitted to the court that the FDIC was served with the documents it now seeks to strike.

 The defendants improperly read Rule 9A(3)(A). The phrase “Upon receipt of the cross motion and opposition, the [Porters] (A) may serve an opposition on the [FDIC]” does not mean that service is permissive. It is illogical for the defendants to contend that, although their opposition to the FDIC’s cross-motion had to be drafted by May 17, 1993, it did not have to be delivered to the FDIC by any certain date.
Instead a correct reading of this section reveals that the defendants were not obligated to oppose the FDIC’s cross-motion for summary judgment, but if the defendants did decide to oppose, which they did, then they were required to comply with subsection (b)(2) of Rule 9A which states: “Every opposing party shall serve on the moving party an original and a copy ... of the opposition . . .”

 As grounds for this contention, the defendants state that Mr. Conley and Ms. Lynch have now “had a change of heart with respect to Mr. and Mrs. Porter’s claims.” This allegation is not enough to satisfy this court that the affidavits were presented in bad faith or solely for the purpose of delay.
This court finds paragraphs 9 and 20 of Peter Conley’s affidavit admissible. Mr. Conley was employed by Landmark Bank from 1986 until 1991. Between the years 1988-1991, he was a senior loan officer and vice president of Landmark. He was responsible in the negotiations of the loan in question and the primary loan officer with whom the Porters dealt in making the loan. He is experienced in the banking business. Paragraphs 15 and 18 of the Conley affidavit are likewise made in accordance with Rule 56 as Peter Conley is the loan officer who dealt with the Porters on this note. He is a representative of the Bank.
The defendants also challenge paragraphs 6 and 7 of the Lynch affidavit. Ms. Lynch is competent to testify concerning matters within her personal knowledge. The information contained therein is not, despite the defendants’ contention, hearsay, and may be offered for the effect the conversations had on Lynch.
This court does not agree with the defendants’ assertion of the motivation behind Mr. Otto’s affidavit. This court cannot find that such an affidavit was made in violation of Rule 56(g). Similarly, this court finds no basis on which to strike certain portions of Otto’s affidavit.
Kathleen Engle’s affidavit incorporates 20 documents. Each document is considered by this court. Exhibit 12 is a copy of L.A Realty Trust’s answer to Landmark’s amended complaint of December 1991. Exhibit 19 consists of documents purporting to be copies of deeds granting title to real estate to various trusts of which Mr. Porter has been, or currently is, the trustee.

 G.L. c. 244, §17B, provides that a deficiency action cannot be maintained by the holder of a mortgage note unless a notice in writing of the mortgagee’s intention to foreclose the mortgage has been mailed, postage prepaid, by registered mail and with return receipt requested to the defendant sought to be charge with the deficiency at his last address then known to the mortgagee, together with a warning of liability for deficiency, . . . not less than 21 days before the date of the sale under the power in the mortgage, and an affidavit has been signed and sworn to within 30 days after the foreclosure sale of the mailing of such notice.

 The FDIC responded to this allegation claiming holder in due course status which would prevent these claims of wrongful foreclosure. In addition, the FDIC was allowed to file copies of notices of the mortgage holder’s intent to foreclose and of deficiency after foreclosure of mortgage. Each notice is accompanied by copies of receipts for certified mail. Two of the notices are addressed to Helen Porter, individually; two are addressed to Ronald Porter, individually; and one notice is addressed to Ronald Porter as Trustee of L.A Realty. The only exhibit which shows the actual return card with the signature of the addressee is the notice addressed to Helen Porter. The FDIC submits one affidavit, dated March 6, 1992, made by Bruce Sutcliffe, President of Landmark Bank for Savings. This affidavit states that notice was complied with pursuant to G.L. c. 244, §14 by mailing the required notice certified mail, return receipt requested, and that such notice was published in the Cape Cod Times.

 As this argument by the Porters is rejected, this court does not decide whether the FDIC qualifies as a holder in due course.

 The Porters also contend that this court previously rejected a “nominee trust” theory of recovery when it denied the Bank’s motion for preliminary injunctions and real estate attachments. This court cannot agree. See Boylston Housing Corp. v. O'Toole, 321 Mass. 538, 545 (1947) (preliminary injunction issued does not adjudicate the parties’ ultimate rights and liabilities).

 In additional support of this argument, the Porters rely on Article III of the Uniform Commercial Code, G.L. c. 106, §3-4-3. This provision relates to Mr. Porter’s limited liability *570 as trustee of L. A. Realty Trust. Since this court finds that the Porters are liable as beneficiaries of the nominee trust, reliance on this statute is misplaced.