## Naaman Tyrrell & others *vs.* Enoch Washburn & others.

A trading association was formed under a constitution which provided, amongst other things, that any person might become a member, with the approval of the directors, by paying in ten dollars and complying with certain other conditions; that officers should be chosen; that a board of directors should attend to the mercantile affairs, and report at each quarterly meeting the amount of trade for the last three months; that the necessary capital for the purchase of goods, beyond the amount received from fees of membership, should be obtained by the directors, for which they should jointly and severally give their promissory note, and for their security for the same should at all times have and hold a legal claim on the whole stock of goods; that they should also procure a store and employ a store-keeper; that a settlement of the affairs of the association should be made semi-annually; that the officers should be chosen annually, and it should be the duty of the new directors, when chosen, annually to clear the old directors from all responsibility for money procured and expended for the benefit of the association, and that, until the old directors were so cleared, their claim should continue upon the whole amount of stock in

trade. *Held*, that the directors had authority to contract debts, which were reasonable and necessary for carrying on the business, on the credit of the members of the association, and that, in the absence of misconduct on their part, they may maintain a bill in equity against the members for contribution towards the payment of debts so contracted by them, but not for contribution towards the costs and expenses of suits instituted against them by creditors of the association.

A person may become a member of such an association by paying in the prescribed amount of money and by acting and being treated and considered as a member, without signing the constitution, although the constitution provides that any person wishing to become a member shall sign it if he receives the approval of the directors.

If such an association, under the erroneous belief that profits have been realized, votes to issue new shares upon certain specified terms, members who take such shares are thereby subjected, as among themselves, to liability for a proportionately increased share of debts.

Members who at any time without fraud withdraw from such an association are thereafter, as among themselves, relieved from liability for debts.

If by the articles of a trading association it is apparent that it was designed to consist of many members, who might from time to time cease to be interested in the concern by voluntary withdrawal or death, and that the same business should be continued by those who should remain, and by such as might be added to their number, under the terms of the articles, the death of one of them does not relieve others from liability to contribute for debts subsequently contracted, without their consent or knowledge.

The costs of all parties to a bill in equity brought by directors of a trading association against the members, for contribution towards the payment of debts, and for winding up the concern, to be taxed as between solicitor and client, are to be assessed ratably upon all the solvent members; all those who are represented by a single solicitor to be allowed but a single bill of costs.

BILL IN EQUITY by the directors of a joint stock company known as Division No. 395 of the New England Protective Union, organized in August 1852, for the purpose of carrying on the ordinary business of country trade, in Orange, in buying and selling merchandise, under a constitution or articles in writing, the material portions of which are copied in the margin.*

---

* ART. 3. Any person wishing to become a member of this Union, can do so by applying to the directors, when, if he receives their approval, he shall sign the constitution and pay into the treasury ten dollars, which shall constitute him a *bona fide* member; two dollars of which shall be received as admission fee; the balance shall be a deposit or trading fund, to remain as a permanent investment until the depositor voluntarily leaves the division; at which time he may draw the amount of his trading fund in goods on demand, but not in cash under three months, unless by a vote of the division.

ART. 4. The officers of this Division shall consist of a President, Vice President, Secretary, Treasurer and three Directors, who shall be chosen annually on the last Saturday in March.

ART. 7. It shall be the duty of the Secretary to keep a faithful record of the

The bill set forth that numerous persons, who were named, have been share-owners in the Division; that some of them have owned more than one share; that various transfers of

doings at all meetings of the Division; also to record the names of all members, and together with the President sign all certificates of membership, and his books shall be open at all times for the inspection of members.

ART. 8. It shall be the duty of the Treasurer to pay all bills that shall be approved by the Directors, to keep an accurate account of all funds received and paid out, and to have his books open to the inspection of members; to report monthly what money has been received and paid out; and for the faithful performance of his trust, he shall give such bonds as the Directors may require.

ART. 9. The board of Directors shall attend to all the mercantile affairs of the Division, subject to the instructions of the same; they shall approve all bills of merchandise and incidental expenses, keep an accurate account of the cost of all the goods, subject at any time to the inspection of members; they shall report at each quarterly meeting the amount of trade for the last three months, and attend to all the correspondence of the Division relative to trade; the necessary capital for the purchase of goods, beyond the amount received of the several members by the payment of their fee of membership, shall be obtained by the Directors, for which jointly and severally they shall give their promissory note, and for their security for the same, they shall at all times have and hold a legal claim on the whole stock of goods in trade, the whole of which it shall be their duty to keep insured, as near as practicable, to the value thereof; they shall procure a store, employ a store-keeper, require of him satisfactory bonds if they deem it expedient, and particularly prescribe his duty, and see that he performs the same, and they shall at all times have full authority to draw out by their order the funds of the treasury, when necessary, and semi-annually they shall report to the Division the amount of stock on hand; there shall be made semi-annually a settlement of the affairs of the Division, and any profits that may have accrued may be divided among the members; or the same may remain to increase the business capital, as shall be directed by a vote of the Division.

ART. 10. The money received for shares and from all other sources shall be expended for the purchase of goods, defraying expenses and such other purposes as the Division may direct.

ART. 11. Any person wishing to withdraw from the Division may transfer his certificate of membership to any other person, by the approval of the board of Directors, which transfer shall be forthwith recorded by the Secretary.

ART. 12. There shall be a regular meeting of this Division on the last Saturday of every three months, at seven o'clock, P. M., unless otherwise ordered by a vote of the Division. . . . . .

ART. 13. Any widow of a deceased member shall be entitled to all the privileges of the Division, so long as she remains such.

shares have been made from time to time, by reason of which it has become difficult to apportion and adjust the losses of the Division; that the Division closed its business in April 1862, and was then found to be insolvent; that large sums were and now are due from the Division to various creditors, upon some of which suits have been commenced against individual share-owners; and that various sums were due to the Division. The prayer was for an account, and a receiver, and that the receiver might have power to make a fair, just and proportionate assessment upon the share-owners, according to their respective liabilities.

After the filing of answers by various of the defendants, the cause was referred to a master, who found the following facts: The records of the Division showed various meetings, with lists of those who attended them, various semi-annual settlements, (which are sufficiently referred to in the opinion,) and lists of the original members, and of those who from time to time withdrew from the Division, and of those who joined the same, together with all the officers thereof. None of the members ever signed the constitution. One of the original members died in 1855. In 1859 Jefford L. Weaver, one of the original members, made a transfer in writing of his interest, but no assent of the directors thereto was shown, and the books of the Division did not show any record thereof, nor had the agent any knowledge thereof. J. B. Kempfield, another of the original members, removed from Orange, without transferring or selling his share, and since then has taken no part in the proceedings of the Division. Lewis R. Howe in 1854 or 1855 bought of one of the original members "the right of drawing out eight dollars," taking a writing, which was not produced, and which might have been, as he testified, a bill of sale of one share in the Division, and afterwards attended several meetings, and took an

ART. 16. It shall be the duty of the new Directors, when chosen, annually to clear the old board of Directors from all responsibility for money that has been procured and expended for the benefit of the Division, and until they are clear from such responsibility their claim shall hold good on the whole amount of stock in trade.

active part in one of them, was chosen a director in 1858, did not decline the office, and signed " as an individual and not as a director" one note with the other directors, to raise money for carrying on the business. Certain other facts appeared, tending to prove that Howe was a member. James Battles, another of the original members, was chosen president of the Division in 1860, and stated at the meeting that if the Division would ex- cuse him from acting as president he would give up his interest in the company; whereupon they voted to excuse him. Damon E. Cheney, another of the original members, sold and trans- ferred his share in 1854, and his transfer was duly recorded. It was understood that stockholders might transfer their interest, or withdraw from the concern, whenever they chose, and the agent was authorized to approve and record transfers.

At a regular meeting held in March 1855 it was voted that " each member may make his dividend up to another share, and that he may draw out ten dollars on each extra share, to be drawn as the first share; and each member may pay in the bal- ance at any time, by paying interest from date on said amount." At the same meeting, and previous to the passage of said vote, a report had been made and accepted, giving the amount of what was claimed as assets, and also the amount of the liabili- ties of the concern, and representing that there had been a gain within the last six months, and that the shares were then worth $16,07. No certificates were issued for the new shares, but certain of the members paid in the requisite amounts, and thereafter considered themselves and were considered by the other members as the owners of two shares each. There were really no dividends when these shares were taken, and no divi- dends have ever been paid to those who took them. No fraud was shown. The insolvency of the Division grew mainly out of the depreciation in value of some of the goods, loss on debts due to the Division, and interest paid on borrowed money. The goods were inventoried at cost, and the notes and accounts were reckoned at par, and on this basis the value of the shares was estimated in March 1855, although the depreciation had then been going on for some time.

A schedule of the debts due from the Division was annexed, and upon some of them suits had been commenced, and were still pending, against individual members of the Division.

*D. Aiken & W. Griswold*, for the plaintiffs. Shareholders are liable for contribution, although they did not strictly conform to the rules. *Keasley* v. *Codd*, 2 C. & P. 408, *n.* *Bourne* v. *Freeth*, 4 Man. & Ry. 512. Colly. Part. §§ 1086, 1087. 1 Parsons on Con. 122. The various persons whose membership is in dispute were members; and the members are liable for the debts. The effect of arts. 9 and 16 of the constitution is only to make the directors agents of the Division for carrying on the business. The debts should be apportioned on the following principle: each debt should be paid by those who were members at the time it was contracted, and who are now solvent; and each person must pay in proportion to the number of shares which he then owned. *Skinner* v. *Dayton*, 19 Johns. 544. *Rianhard* v *Hovey*, 13 Ohio, 300. *Towner* v. *Lane*, 9 Leigh, (Va.) 262.

*A. Brainard*, for two of the defendants, sent in a brief, contending that their membership had ceased.

*G. T. Davis*, for the rest of the defendants. Signing the constitution was essential to membership, as among the parties themselves. At any rate, liability, if it ever accrued, ceased upon withdrawal. *Skinner* v. *Dayton*, 19 Johns. 544. Colly. Part. § 536. But under the constitution the shareholders did not intend to be liable for debts. As between them and the directors, the latter assumed the responsibility. Besides; the directors were guilty of misconduct, in making incorrect reports and otherwise, which should defeat their claim for contribution. This being a partnership, it was dissolved by the death of any member; so that one who thereafter took no part in the concern would not be liable for debts subsequently contracted without his consent or knowledge. *Marlett* v. *Jackman*, 3 Allen, 287. *Knowlton* v. *Reed*, 38 Maine, 250. The creation of new shares was founded on the making of a dividend, which in fact never was declared or paid, and for which there were no assets; and the persons receiving such shares are not thereby subjected to increased liability. Kempfield, Howe, Battles, Weaver and

Cheney should be exempt from contribution. There should be no contribution for the costs of suits commenced against the plaintiffs.

CHAPMAN, J. The plaintiffs are the directors of a trading company which bears the name of Division No. 395 of the New England Protective Union. The company has become insolvent, and the plaintiffs bring their bill against the defendants, as members of the company, for the purpose of winding up its affairs and compelling the defendants to contribute, each his just proportion, for the payment of its debts. It is properly admitted by all parties that the company is a mere partnership. It is organized in conformity with a constitution and by-laws, which are to be regarded as a special agreement adopted by the copartners, and binding upon them as among themselves. It does not, however, affect their obligations to creditors; and as among themselves the rules of law applicable to partnerships must prevail, except so far as they are modified by the specia' agreement.

It is objected that the directors have no right to recover, because it is alleged that they had no authority to contract debts. But the ninth article of the constitution gives them full authority to obtain the necessary capital for the purchase of goods beyond the amount received of the several members by the payment of the fee of membership; to give notes for the same; to procure a store, employ a store-keeper, and attend to all the mercantile affairs of the Division. Indeed it seems to have been intended that the business should be principally carried on by means of borrowed capital; for the small contribution of ten dollars, which is all that each shareholder is to pay, could not be supposed to be a sufficient capital to carry on the business of an ordinary country store, without dealing largely on credit. Nor is there any restriction upon the discretion of the directors as to the amount of money to be borrowed or of goods to be purchased on credit. The directors are to be regarded as the agents of the company, and the members are bound by their contracts made within the scope of their authority. As to creditors, each member is liable to pay all the debts of the company.

As between them and the directors they are bound to contribute to the payment of the debts, unless they are released by some misconduct on the part of the directors.

Nothing of this kind appears in the master's report. He finds that the money borrowed was necessary for carrying on their business, and their insolvency grew mainly out of the depreciation in the value of some of their goods, loss on notes and accounts, and interest paid on borrowed money. It is true that the semi-annual settlements required by the constitution do not appear to have been made. The settlements actually made only served to mislead, the goods being inventoried at cost, and the notes and accounts at par. The insolvency was thus the natural result of going into a hazardous business, in which they were unskilled. The court are of opinion that nothing is proved against the directors which should exempt the members from contribution.

The defendants further contend that they are not liable, because none of them have signed the constitution. The third article provides that each member shall sign the constitution and pay into the treasury ten dollars, two dollars of which shall be an admission fee ; the residue shall be a deposit or trading fund, to remain as a permanent investment until the depositor voluntarily leaves the Division, at which time he may withdraw the amount of his trading fund in goods on demand, but not in cash under three months, unless by a vote of the directors. But the court are of opinion that the signing of the constitution is not a necessary prerequisite to membership. By the law of partnership, one becomes a member of a firm when he contributes to the capital stock and is admitted to a community of interest with the other partners in the property, business, profits and responsibilities of the partnership. It appears that those who paid in their ten dollars were admitted to such community, though they had not signed the constitution. They must, therefore, be regarded as partners.

It appears that after they had been in business for some time, it was believed that they had accumulated a considerable amount of profits, and that new shares were created. Several

of the defendants agreed to take an additional share each. Some of them did nothing under the agreement. Others made a payment of four dollars each, and thus acquired new shares. These last must be regarded as holding additional shares, because they were entitled to a community of profits on account of such shares, and thus subjected themselves to a proportionate part of the responsibilities.

It appears that some persons who had been members withdrew from the firm, taking out their eight dollars; others sold and transferred their shares, and the purchasers were admitted by the directors as members, and acted as such; and others have deceased. Questions are raised as to the effect of these changes. The constitution and by-laws allowed each member to retire at his pleasure. This is in conformity with the general law of partnership. And, in the absence of any special agreement, the retirement or decease of a member would dissolve the partnership. In such case the retiring member and the estate of the deceased member would be liable for all the debts of the company. On this account the retiring member or the representative of the deceased member might, in the absence of any special agreement, maintain a suit in equity for winding up the partnership affairs, and compelling the application of the assets to the payment of debts.

A partnership, therefore, is by no means adapted to carry on a business which is designed to be permanent, or in which a large number of persons unite, or where changes of membership are expected to take place. The only safe method of prosecuting such business is by means of corporate powers. A corporation is not affected by the decease of one or more of its members, and its shares may be transferred, so that existing stockholders may go out, and new ones may be admitted without disturbing its business, and with safety to the members.

The originators of this scheme have endeavored to avail themselves of the advantages of a corporation, under an association as partners. As between the retiring members and creditors of the company, the attempt is unsuccessful. Such members remain liable for all existing debts; and they may be

liable for subsequent debts to creditors who had knowledge of their membership, but had not had notice of their withdrawal. But as among themselves, their rights and liabilities may be modified by special agreement. By the fair interpretation of the agreement made by this company, the retiring member is entitled to nothing but his eight dollars. The company retain the assets and assume the debts, absolving him from all liability for the same. On the other hand, he has no longer a right to vote in the management of their business, nor can he compel them to wind up their affairs. His security is in the solvency of the members who may remain when the affairs are wound up.

One of the consequences of this provision is, that when a member learns that the company is likely to prove insolvent, he may retire, and leave his associates to bear the burden. The more watchful and shrewd associates will be likely to do this, and leave the more unskilful and ignorant to suffer. We do not decide that if a member takes this course fraudulently, he may thereby exempt himself from contribution. But in the present case no fraud is alleged against any of the retiring members; and the court are of opinion that they are all exempt. This rule applies to those who have assigned their shares, so far as the assignees have been admitted as members in their stead, and also to those who have deceased. The plaintiffs are entitled to contribution from those who were members when the bill was filed.

It is also objected by the defendants that, inasmuch as a partnership is dissolved by the death of one of its members, so that a surviving partner cannot be held responsible on a contract thereafter made without his assent or knowledge by another partner, (as was held in *Marlett* v. *Jackman,* 3 Allen, 287,) the death of John Putnam in 1855 operated to relieve from liability all who thereafter took no part in the company and did not assent to or know of its subsequent transactions. But the doctrine there established is not applicable to this case. It is apparent, on a just construction of the articles under which this Division was organized, that it was designed to consist of many members, who might from time to time cease to be interested

therein by death or by voluntary withdrawal, and that the same business should be continued in the same manner by those who should remain, and by such as might be added to their number under the terms of the articles. Under these circumstances, it must be considered that each member agreed to be and remain a partner in the association, notwithstanding changes in others of its members, until such time as he himself should die, or withdraw therefrom by some positive act of his own. Story on Part. § 319, *a.*

Questions are raised in respect to the membership of certain individuals. As to the defendant Howe, the evidence shows that he is a member, he having become interested in the assets, and having been permitted to act as a member and a director. The defendants Battles and Cheney are proved to have withdrawn, and are not liable. The evidence that the defendant Weaver has withdrawn is not sufficient to establish the fact, and he must be regarded as liable.

The plaintiffs have no claim for costs or counsel fees in the suits brought against them by creditors; for it was their duty to pay the debts of the company without suit. This is the duty of any member upon whom a creditor makes a claim.

The costs of the present suit are to be paid by contribution. The plaintiffs may tax their bill; the defendants who are represented by Mr. Brainard may tax one bill; and those who are represented by Mr. Davis may tax another bill; the taxation to be as between solicitor and client. The assessment is to be made upon the solvent members of the company. The case is to be recommitted to the master to make a further report, and is to stand for further directions.