## NINI et al. v. CRAVENS & CAGE CO. (No. 837.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 25, 1922. Rehearing Denied June 13, 1923.)

1. Joint-stock companies and business trusts ⬤⟶15(1)—Members held jointly and severally liable for debts incurred by trustees.

Members of unincorporated association, not constituting a limited partnership, but organized under declaration of trust placing the management of the business in the hands of trustees held jointly and severally liable for debts incurred by trustees in the conduct of such business under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6149, 6152, 6153, though under such declaration of trust they had no direct control or authority over the trustees or their management of the business.

2. Joint-stock companies and business trusts ⬤⟶15(1)—Members held jointly and severally liable for debts incurred in conduct of its business.

Persons who associate themselves together for the purpose of carrying on a business enterprise for their mutual profit are jointly and severally responsible for the debts incurred in the conduct of the business unless the association is organized as a limited partnership or a corporation, or specially contracts with those dealing with the association that only funds and property of the association shall be

liable under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6149, 6152, 6153.

**3. Joint-stock companies and business trusts ⊛15(1)—Members investing trustees with management liable for debts, though organization is not a partnership or joint-stock company.**

Members of organization doing business under a declaration of trust investing management in the hands of trustees and expressly authorizing the trustees to incur indebtedness under the rules of law applicable to the relation of principal and agent, even though neither partnership nor a joint-stock company was created by the articles.

**4. Trusts ⊛51—Express trust in violation of principles of equity is a nullity.**

The right to create an express trust is subordinate to the fundamental principles of equity, and an express trust created in violation of such principles is a nullity.

**5. Joint-stock companies and business trusts ⊛15(1)—Test of liability of members of a business trust stated.**

Under articles of association designated a "declaration of trust," but reserving power to the certificate holders to elect the trustees and transact business at annual and special meetings, the certificate holders are thereby rendered liable as partners for association debts even if Massachusetts trust rule is the law in this state, the test of liability of the shareholders being the power to elect trustees and transact business rather than the extent to which they exercise such powers.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by the Cravens & Cage Company against L. F. Nini and others. From a judgment for plaintiff, certain of the defendants appeal. Affirmed.

Cooper & Merrill, of Houston, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

WALKER, J. We take the following statement of the nature and result of this suit from the brief of appellant:

"This suit was brought by the appellee, Cravens-Cage Company against the appellant and others by petition filed on the 21st day of January, 1921, in which the appellee, Cravens-Cage Company, sought recovery upon seven notes in the sum of $200 each, due monthly, executed by L. F. Nini and secured by chattel mortgage lien upon one Franklin automobile, and alleged that the appellants herein were members and stockholders in an organization or association known as the Waldman-Ross Motor Company, and that such notes were given to said Waldman-Ross Motor Company, and by the said Waldman-Ross Motor Company duly indorsed and transferred to the appellee Cravens-Cage Company, and that said notes provided for the holder and owner thereof to declare them all due upon the failure to pay any one at maturity, and that one of said notes had matured on the 30th day of November, 1920, and had not been paid, and that the appellee Cravens-Cage Company had declared them all due.

"It was alleged that the instrument under which the organization was effected and of which appellants were shareholders and interested was duly recorded in the office of the county clerk of Jefferson county on the 20th day of April, 1920, prior to the date of the execution of the notes by the said L. F. Nini, and of which all of the appellants were shareholders and interested therein prior to the receiving of the notes by the said Waldman-Ross Motor Company and the execution thereof by the said Nini, and alleged that under the terms of said agreement executed by the several defendants they were conducting an enterprise for profit and that the instrument was executed by the appellants, H. A. Sanders, B. A. Steinhagen, G. W. Swain, M. Waldman, Gus Bienvenu, and S. M. Hargrove, and that by the terms of such instrument they were constituted the agents of each other and of the other appellants herein, and especially alleged that they constituted the defendant Waldman-Ross Motor Company and were the agents in the conducting and management of the affairs of said business, and alleged that, acting through the defendant Swain, who was acting for himself and was fully authorized to act for each of the other appellants and to deal with the public, appellant became bound to the said Cravens-Cage Company as indorsers. The appellee, Cravens-Cage Company, further alleged that if it was mistaken in the allegation of agency, then they alleged that they were partners in the business enterprise for profit under the name of Waldman-Ross Motor Company, and that the parties named as agents and representatives were the only authorized agents and representatives of the aforesaid enterprise to manage and conduct its affairs, and sought a recovery against them as indorsers for the principal, interest and attorney fees on the note sued on, upon the theory that their liability attached by their being shareholders. The appellee, Cravens-Cage Company, further alleged that the purported chattel mortgage was invalid, and that in fact no such motor car as described therein was ever delivered to the said Nini, and the transaction was wholly fictitious, but that the appellee, Cravens-Cage Company, believed it was a bona fide transaction and relied upon it as such, and with prayer for its debt against Nini as principal and each of the appellants herein as indorsers.

"The appellant answered under oath denying any partnership or agency, and specially pleaded the terms and stipulations of the agreement of association and each of them denied any personal liability.

"The appellant, M. Waldman, specially denied that he was ever a trustee of such organization or acted as such. Upon trial of the case judgment was rendered in favor of the appellant for $1,651.95 against L. F. Nini, as principal, and C. C. Snell, H. G. Bevil, M. L. Boyer, G. W. Swain, Gus Bienvenu, M. Waldman, B. C. Ross, B. A. Steinhagen, Guy Cofman, O. K. Swan, E. E. Hartford, H. A. Sanders, Harvey Sanders, F. B. Hart, and the Waldman-Ross Motor Company, jointly and severally, as in-

dorsers, and for all costs, and all the other defendants were dismissed from said proceeding with their costs.

"The appellant excepted to the judgment and ruling of the court and gave notice of appeal to the Court of Civil Appeals for the First Supreme Judicial District at Galveston, Tex., and within time thereafter filed their appeal bond, and have brought the cause to this court for revision of the errors that they contend were committed on the trial hereof.

"The real issues of this case are to be determined by the proper construction of a written instrument which is contended by appellant to be an imperfect common-law trust, and in which there is no personal liability or responsibility to be charged against them as members of or shareholders therein."

The following additional statement from the brief of appellee explains more fully the relations of the parties to this suit and the issues involved in this appeal:

"The statement of the nature and result of the suit in the trial court as contained in appellants' brief is in the main correct. However, neither from this statement nor appellants' brief is it clear as to who the appellants are. Appellee, the Cravens-Cage Company, recovered judgment in the trial court against the defendant L. F. Nini, as principal, and the defendants, C. C. Snell, H. G. Bevil, M. L. Boyer, G. W. Swain, Gus Bienvenu, M. Waldman, B. C. Ross, B. A. Steinhagen, Guy Cofman, O. K. Swan, E. E. Hartford, H. A. Sanders, F. B. Hart, Harvey Sanders, and Waldman-Ross Motor Company, an unincorporated association of which all of said lastnamed defendants, other than the defendant L. F. Nini, were members, jointly and severally as indorsers. The defendant L. F. Nini is named as appellant, but such defendant has not appealed from the judgment as rendered in the trial court; neither have some of the other defendants as against whom judgment was rendered appealed. The only defendants who filed an appeal bond are M. Waldman, B. C. Ross, B. A. Steinhagen, Guy Cofman, O. K. Swan, E. E. Hartford, H. A. Sanders and Harvey Sanders."

The articles of association referred to in the above statements are as follows:

"No. 24,487.

"The State of Texas, County of Jefferson.

"Know all men by these presents: That we, the subscribers and trustees hereto, have this the 29th day of March, A. D. 1920, entered into an agreement and contract to create a trust under which the appointed and constituted trustees hereunder shall be empowered to operate a business as hereinafter explained by this instrument.

"To this end the subscribers associate themselves together in the formation of a trust for the purposes hereinafter stated, and without personal liability of the shareholders herein. It is intended and proposed that all others than the subscribers hereto who may become the owners of shares of stock in this association ipso facto agree to accept the terms of this instrument and declaration of trust to all intents and purposes as if they were the original subscribers hereto. Further it is understood and agreed that we and such other shareholders as may come into said association are associated together merely and solely for the purpose of being cestui que trustents of the trust hereby created, thus being entitled to the equitable and beneficial interest of all profits and property, both personal and real of the trust estate hereby created our respective proportionate interests to be determined by the number of shares held by each of us, said shares being representative of such interest.

"This association shall be known as the 'Waldman-Ross Motor Company.'

"The disposition of said stock in said company is to be made by the trustees in the manner hereinafter set out.

"We do now covenant and declare that the following are and shall be the fundamental articles of said trust by which we and all persons who at any time hereafter may transact any business with the said trustees shall be bound and concluded. The contracting parties and trustees herein signify and confirm by their certificates and signatures to this instrument their acceptance of all of its terms and their obligations to perform and discharge the duties imposed by this instrument.

"I. The capital stock of said association, which is to be known as aforesaid by the name of Waldman-Ross Motor Company, is one hundred thousand ($100,000.00) dollars, to be divided into one thousand (1000) shares of the par value of one hundred ($100.00) dollars each.

"II. M. Waldman, S. M. Hargrove, H. A. Sanders, B. A. Steinhagen, G. W. Swain, and G. Bienvenu are here and now designated trustees of said trust, with powers and duties and the limitation of same as hereinafter specified.

"III. G. Bienvenu, trustee, is to fill the office of secretary and S. M. Hargrove, trustee, is to fill the office of treasurer, and shall perform such other duties as are necessary and usually performed by such officers in a similar business, but it is understood that they shall have no power to bind the trust by contract, except as such power is delegated to them in writing by a majority of the trustees.

"IV. G. W. Swain, trustee, shall be the president and general manager of said company with powers and duties, authority and rights, to do all things necessary in assisting to carry out the purposes of said trust as hereinafter set out, and the said trustee aforesaid, acting with the other trustees, are hereby empowered to execute all contracts, deeds, transfers, assignments and all other instruments to pass title to trust property, bind the trust estate, provided the stock certificates hereinafter mentioned in this trust agreement may be executed and signed by the president or by the vice president, acting in the absence of the president, and also signed by the secretary and treasurer in attestation with the seal of said company impressed thereon.

"V. M. Waldman, as one of the trustees herein, shall act as vice president of said company.

"VI. The trustees aforesaid and their successors in trust shall hold the legal title to all property that may be acquired by or for the

benefit of the trust estate, and shall have and exercise exclusive management, disposition and control of the same, subject to the terms and provisions of this declaration of trust.

"VII. The purposes and object of the trust shall be to purchase, lease, or otherwise acquire and to own, sell, or otherwise dispose of automobiles, trucks, tractors, gasoline, oils, tires, casings, and all other, accessories used in connection with the automobile business, and to do all and other necessary and proper things incident to the conduction of a business aforesaid in such manner as may be to the best interest and profits of the trust estate, subject, however, to this declaration of trust.

"VIII. Any trustee may acquire, own and dispose of shares in the Waldman-Ross Motor Company to the same extent as if he were not a trustee. The trustees shall not be liable to the shareholders for error in judgment in prosecuting and managing the trust property, interest and business, nor for any act done by them, or either of them, in the course of such management, nor for any omission to act in the execution of this trust, except such acts of omissions as involve bad faith on their part, nor shall they be liable for the acts or omissions of each other, nor for the acts or omissions of any officer, agent or servant appointed by or acting for them; and they shall not be obligated to give bond to secure the performance of this trust by them, and should they, or either of them, be held personally liable on any tort or breach of contract in the prosecution of the trust interest, they, or either of them, will be entitled to indemnity out of the trust estate to the extent of such liability.

"IX. As a compensation for accepting and performing the duties imposed by this trust in addition to the transfer and assignment of the partnership interest of the Waldman-Ross Motor Company now operating at 673 Orleans street, Beaumont, Texas, and in addition to the transfer of the Beaumont Agency of the Franklyn Motor Company, together with all of its assets, to the aforesaid trustee in trust and in consideration as above stated, shall have issued to them $34,601.81 worth of the capital stock of said Waldman-Ross Motor Company to be divided among them as their interest may appear. A complete description of the property now held in trust at the execution of this instrument by the trustee aforesaid is fully described and set out in a certain instrument of assignment to the trustees aforesaid in their capacities aforesaid for the Waldman-Ross Motor Company, which said instruments are duly recorded in the county clerk's office of Jefferson county, Texas, reference to which assignments is hereby made for a more complete and accurate description of the present assets of the company.

"X. The trustees above named shall serve from the date hereof till Dec. 31, 1920, or until their successors have been duly elected and qualified in accordance with the declaration of trust hereby entered into. In this connection it is understood and agreed that upon the resignation or death of any trustee during his term of office, such vacancy shall be filled by the remaining-members of the board of directors or trustees of said trust.

"XI. The trustees shall issue the following form of certificate, to wit:

"Waldman-Ross Motor Company.

"Capital Stock $100,000.00.

"No. ——.　　　　　　　　　—— Shares.

"(This is a joint-stock association. The articles creating it vest control of its affairs in a board of trustees acting under a declaration of trust recorded in the deed records of Jefferson county, Texas, at volume ——, page ——, reference to which is hereby had. Such articles provide that the entire association assets shall be charged with payment of all its liabilities, and exempt the trustees and shareholders from all personal liability for same.)

"This certifies that —————— is the holder of —————— fully paid shares in the Waldman-Ross Motor Company, which he holds subject to an agreement and declaration of trust, dated March, 1920, and which is recorded in the deed records of the above-named county, hereby referred to and made a part of this certificate, of which all persons dealing with this company shall take notice.

"The shares of the Waldman-Ross Motor Company are of the par value of $100.00 each.

"No transfer hereof will affect the Waldman-Ross Motor Company until this certificate has been surrendered and the transfer recorded upon its books.

"In witness whereof, the president and secretary under said declaration of trust have signed their names in authentication hereof, this the —————— day of March, A. D. 1920.

"——————, President.

"——————, Secretary.

"$100.00.

"XII. The proceeds arising from the sale of stock in said company shall be used by the trustees for the performance of this trust as herein provided, and any profits arising from the conduct of the business shall become part of the corporate of the trust fund. The trustees being authorized to set aside from time to time such portions of the net income as they may think proper for the surplus or to declare dividends.

"XIII. This trust shall continue for such time as the business proves to be profitable, but may be terminated sooner by the trustees if they find it desirable to do so for the best interest of the estate and cestui que trustents.

"The trustees shall render an account annually and oftener if convenient to them, and shall mail a copy to the last known address of each cestui que trustent.

"XIV. The ownership of shares in the said company shall not entitle a shareholder to any portion of the legal title to any of the trust property whatsoever, either personal or real, nor to the right to call for a partition or division of the same, or for an accounting, nor shall any shareholder have the right to amend, alter, or terminate this trust. The trustees shall have no power to bind the shareholders personally, and the shareholders and their assigns and all parties whomsoever extending credit to, contracting with, or having any claim against the trustees, shall look only and solely to the funds and property of the trust for payment under such contract or claim, or for any debt, damages, judgments, or decrees, or for any money or property that may otherwise be due or become due, payable or transferable to

them from the trustees, so that neither the trustees nor the shareholders at any time shall be personally liable for any such claim. In every written order contract or obligation which the trustees by themselves or by any officer or agent, shall give or enter into, it shall be the duty of the trustees to refer to this declaration of trust and to stipulate that any such contract or obligation shall be subject to all the terms of this declaration of trust.

"XV. Further it is declared that any person who shall accept a certificate of stock in said company ipso facto becomes a party of this declaration of trust and shall be bound and concluded by all of its terms and conditions. No transfer of stock in this company shall be considered binding unless due notice thereof shall be given in writing to the trustees; and it is hereby expressly declared that any shareholder who shall transfer his stock in said company to any other person shall ipso facto cease to be a member of this company.

"XVI. It is declared that this declaration of trust shall be recorded in the deed records of Jefferson county, Texas, as well as in the deed records of any other counties in this state in which this company elects to establish a branch office, and that the original hereof shall be retained by the said trustee.

"XVII. Upon the termination of this trust the then shareholders shall participate in the distribution of all properties belonging to said trust estate, and the assets shall be distributed pro rata to each shareholder according to the value and number of shares held by each.

"XVIII. The seal of this company shall be in the form of a circle, with the name Waldman-Ross Motor Company in the center and shall bear the name Beaumont, Texas, and the year 1920.

"XIX. To eliminate any question which might be raised as to the intention of the parties to this instrument, as well as to the cestui que trustents, it is hereby stipulated and declared that the purpose is to create a trust and not a partnership.

"XX. It is further provided that if in the discretion of the trustees they think it to the best interest of this company that the treasurer may be bonded; this, however, is left to their discretion.

"XXI. The trustees may alter or amend this declaration of trust at any time which they may think proper so to do except as to the person—— liability.

"XXII. The fiscal year of the trustees shall end on the 31st day of December in each year. Annual meetings of the shareholders for the transaction of business shall be held in Beaumont, in Jefferson county, Texas, on the Wednesday following the second Monday in January in each year, beginning with the year 1920, of which meeting notice shall be given by the secretary, by mail, to each shareholder at his registered address, at least ten days before said meeting.

"Special meetings of the shareholders may be called at any time, upon ten days notice given as above stated, when ordered by the president or trustees. At all meetings of the shareholders, each holder of shares shall be entitled to one vote for each share held by him, and any shareholder may vote by proxy.

"No business shall be transacted at any special meeting of the shareholders unless notice of such business has been given in the call for the meetings.

"No business except to adjourn shall be transacted at any meetings of the shareholders unless the holders of a majority of all the shares outstanding are present in person or by proxy.

"XXIII. The death of a shareholder or trustee during the continuance of this trust shall not operate to determine the trust, nor shall it entitle the legal representative of the deceased shareholder to an accounting or to take any action in court or elsewhere against the trustees, but the executors, administrators or assigns of any deceased shareholder shall succeed to the rights of said decedent under this trust upon surrender of the certificates for the shares owned by him.

"In witness whereof we, the trustees and original contracting parties under this declaration of trust, sign our names in duplicate originals in authorization, this the 29th day of March, A. D. 1920. H. A. Sanders, B. A. Steinhagen, G. W. Swain, M. Waldman, by G. W. Swain, Atty. in Fact, Gus Bienvenu, S. M. Hargrove, Subscribers and as Trustees for Waldman-Ross Motor Company.

"State of Texas, County of Jefferson.

"Before me, the undersigned authority on this day personally appeared H. A. Sanders, B. A. Steinhagen, G. W. Swain, S. M. Hargrove and Gus Bienvenu known to me to be the person— whose names are subscribed to the foregoing instrument and severally acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

"Given under my hand and seal of office this the 29 day of March, 1920. Jno. D. McCall, Notary Public, Jefferson County, Texas. [Seal.]"

This case was tried on the following agreement:

"It is agreed by the defendants herein who are represented by the firm of Cooper & Merrill, that each of such defendants owned and held shares of stock in the association at the time of the transfer of the notes sued on herein by plaintiffs, and that they either paid cash or value for them."

The following indorsement was made on the notes:

"For value received, we and each and all of the indorsers hereon, jointly and severally guarantee payment of principal and interest of the within note, as and when the same shall become due, and any extensions thereof, in whole or in part, accepting all its provisions authorizing the maker without notice to us or either of us, to obtain an extension or extensions in whole or in part, and waiving presentment for payment, demand, protest and notice of protest and nonpayment; also agreeing that in case of nonpayment of principal or interest when due, suit may be brought at Houston, Texas, by the holder of this note against any one or more or all of us, at the option of said holder whether such suit has been commenced against the maker or not, and that in any such suit, the maker may be joined with

one or more or all of us, at the option of the holder.     Waldman-Ross Motor Co.,
"By G. W. Swain, Dealer."

[1, 2] As we understand the issues of law raised by this appeal, they are the same in the main as presented in Wells v. Mackay Telegraph & Cable Co., 239 S. W. 1001, and McCamey v. Hollister (Tex. Civ. App.) 241 S. W. 689, which are thus stated, in the second and third syllabi to Wells v. Mackay:

"Members of unincorporated association, not constituting a limited partnership, but organized under declaration of trust placing the management of the business in the hands of trustees, held jointly and severally liable for debts incurred by trustees in the conduct of such business under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6149, 6152, 6153, though under such declaration of trust they had no direct control or authority over the trustees or their management of the business.

"Persons who associate themselves together for the purpose of carrying on a business enterprise for their mutual profit are jointly and severally responsible for the debts incurred in the conduct of such business unless the association is organized as a limited partnership or a corporation, or specially contracts with those dealing with the association that only the funds and property of the association shall be liable, under Vernon's Sayles' Ann. St. 1914, arts. 6149, 6152, 6153."

[3, 4] And the seventh and eighth syllabi to McCamey v. Hollister:

"Members of organization doing business under a declaration of trust investing management of the business in the hands of trustees, and expressly authorizing the trustees to incur indebtedness, would be liable for debts so incurred under the rules of law applicable to the relation of principal and agent, even though neither partnership nor a joint-stock company was created by the articles."

"The right to create an express trust is subordinate to the fundamental principles of equity, and an express trust created in violation of such principles is a nullity."

The two cited cases have had our most careful consideration, and the reasons given sustaining quoted syllabi are to our minds both exhaustive and conclusive. Hence, without attempting to restate the arguments of the Courts of Civil Appeals for the First and Second Supreme Judicial Districts, we adopt their conclusion and reasoning as our own, and hereby refer to the above-cited cases and authorities therein cited as a basis for our conclusions.

[5] Again, the only provisions we find in the articles of association for the election of trustees is as follows:

"The trustees above named shall serve from the date hereof till Dec. 31, 1920, or until their successors have been duly elected and qualified in accordance with the declaration of trust hereby entered into. In this connection it is understood and agreed that upon the resignation or death of any trustee during his term of office, such vacancy shall be filled by the remaining members of the board of directors or trustees of said trust."

It appears from this section that the original trustees were to serve only until the 31st of December, 1920, and a careful reading of the articles of association leads to the conclusion that their successors were to be elected by the shareholders, and, as further analyzed by appellee:

"The articles of association further provided that annual meetings of the shareholders for the transaction of business should be held on the second Monday in January in each year after notice being duly mailed to shareholders, and further that special meetings of the shareholders for the transaction of business might be held upon call by the president or trustees.

"By reason of these provisions it is clear that the power to elect trustees for the business after December 31, 1920, was vested in the shareholders of the Waldman-Ross Motor Company and that it was contemplated that in addition to their power to so elect trustees after that date they would supervise the business of the organization at either their annual meetings or at special meetings which would be called." Article XXII, Articles of Association.

On this analysis of the articles of association, even if the doctrine of Massachusetts trust is the law of this state—and appellees base their appeal on that assumption—in our judgment appellants were liable as partners for the debts of the association. In Fletcher's Cyclopedia, Corporations, page 10468, it is said:

"Under the Massachusetts rule, the character of the association is to be determined from the provisions of the trust deed or declaration and the powers which it confers upon the certificate holders, rather than by the extent to which these powers are executed. What the parties actually did in making the trust indenture is decisive in determining whether there is a trust or a partnership, rather than a statement therein as to what they intended to do, although such a statement may be considered in determining what they did when that is doubtful."

The Supreme Court of Massachusetts announces the rule of law that the test whether a declaration of trust creates a trust or a partnership "depends upon the way in which the trustees are to conduct the affairs committed to their charge. If they act as principals and are free from the control of the certificate holders, a trust is created, but if they are subject to the control of the certificate holders it is a partnership." Frost v. Thompson, 219 Mass. 360, 106 N. E. 1009.

We believe the trustees of the Waldman-Ross Motor Company "were subject to the control of the certificate holders," within the Massachusetts rule, as shown by the following analysis of the decisions of that state, which we take from appellee's brief:

"Williams v. Milton, 215 Mass. 1, 102 N. E. 355. Boston personal property trust; no meetings of any sort were held of the shareholders. Trust.

"Mayo v. Moritz, 151 Mass. 481, 24 N. E. 1083. Development of patent; no meeting of shareholders. Trust.

"Hoadley v. Essex, 105 Mass. 519. Shoe repairing machine; meetings of shareholders to elect executive committee. Partnership.

"Gleason v. McKay, 134 Mass. 419. Same instrument as in Hoadley v. Essex. Partnership.

"Whitman v. Porter, 107 Mass. 522. Running ferry boat; meeting of shareholders. Partnership.

"Phillips v. Blatchford, 137 Mass. 510. Manufacturing business; meeting of shareholders. Partnership.

"Ricker v. American L. & T. Co., 140 Mass. 346, 5 N. E. 284. Car trust; meetings of shareholders. Partnership.

"Williams v. Boston, 208 Mass. 497, 94 N. E. 808. Development of realty; meetings of shareholders. Partnership.

"Frost v. Thompson, 219 Mass. 360, 106 N. E. 1009. Note of fruit company; meetings of shareholders. Partnership.

"Tyrrell v. Washburn, 88 Mass. (6 Allen) 466. General merchandise; meetings of members. Partnership.

"Priestley v. Burrill, 230 Mass. 452, 120 N. E. 100. Real estate trust; 'Trustees shall have entire control and management;' but the 'trustees may call meetings of shareholders.' Partnership.

"Dana v. Receiver General, 227 Mass. 562, 116 N. E. 941. Manufacturing; meeting of shareholders. Partnership.

"Real Trust; meetings of shareholders. Partnership.

"Real Estate Trust; no meetings of shareholders. Trust."

If so, the trial court properly held them liable as partners. For this reason, and because of our approval of the propositions of law announced in the syllabi above quoted from Wells v. Mackay Telegraph & Cable Company, and McCamey v. Hollister, it is our order that the judgment of the trial court be in all things affirmed.