**CARPENTER et al. v. WHITE, Collector of Internal Revenue.**

**PARKHILL MFG. CO. v. SAME.**

**Nos. 2920, 2921.**

District Court, D. Massachusetts.

Dec. 21, 1934.

Burton E. Eames, Tyler, Eames, Wright & Reynolds, and R. Gaynor Wellings, all of Boston, Mass., for plaintiffs.

Francis J. W. Ford, U. S. Atty., J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., and Frank J. Wideman, Asst. Atty. Gen., and Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to Atty. Gen., for defendant.

McLELLAN, District Judge.

These actions at law for the recovery of amounts paid as stamp taxes were heard together solely on an agreed statement of facts, which is incorporated herein by reference. The facts are as there stipulated.

The first question presented is whether there was a sale of land by the plaintiffs, within the meaning of the pertinent statutes, which follow:

Revenue Act of 1924:

"Sec. 800. On and after the expiration of thirty days after the enactment of this Act [March 28, 1926], there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this chapter, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule. The taxes imposed by this section shall, in the case of any article upon which a corresponding stamp tax is now imposed by law, be in lieu of such tax."

Schedule A (5). "Conveyances: Deed, instrument, or writing, whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value of the interest or property conveyed, exclusive of the value of any lien or encumbrance remaining thereon at

the time of sale; exceeds $100 and does not exceed $500, 50 cents; and for each additional $500 or fractional part thereof, 50 cents. This subdivision shall not apply to any instrument or writing given to secure a debt." 26 USCA § 901 and note.

The plaintiffs Frank P. Carpenter et al., on and prior to August 25, 1925, were, and now are, trustees under a declaration of trust dated September 29, 1911, creating an association called Amoskeag Manufacturing Company. The agreed statement contains no stipulation as to the nature of the 1911 association, but a copy of the agreement and declaration of trust is set forth, and it would seem that the trustees had no such complete control and dominion over the property as is requisite to the existence of a strict trust, and that, within the doctrine of Williams v. Inhabitants of Milton, 215 Mass. 1, 102 N. E. 355, the association is to be regarded for many purposes as a partnership, in which the trustees hold the legal title to the property as agents for the shareholders.

The plaintiff Parkhill Manufacturing Company is a Massachusetts corporation.

Shortly prior to August 25, 1925, the plaintiffs Frank P. Carpenter et al. and the plaintiff Parkhill Manufacturing Company desired to effect a consolidation of their properties and businesses, and they entered into a plan that a new trust should be created, which should take the name Amoskeag Manufacturing Company, the former trust of 1911 to be continued in existence, but its name to be changed to Amoskeag Company. The plant and a substantial amount of other assets of the former trust of 1911 and the plant and all other assets of Parkhill Manufacturing Company were to be conveyed to the new trust. On August 25, 1925, such new trust was formed under an agreement and declaration of trust, a copy of which is annexed to the agreed statement of facts. The votes under which the papers hereinbefore referred to were executed are also there set forth.

The agreed statement says that "the plaintiffs, Carpenter et als. on August 25, 1925, executed and delivered a deed in the name of Amoskeag Company (the trust of 1911, formerly Amoskeag Manufacturing Company) to Amoskeag Manufacturing Company, the new organization under declaration of trust dated August 25, 1925, and subsequently, on or about October 19, 1925, also executed and delivered a confirmatory deed in the names of the plaintiffs, said Carpenter, et al., trustees, to said Amoskeag Manufac-

turing Company, the new organization under declaration of trust, dated August 25, 1925, copies of which deeds are hereto annexed. * * *" An inspection of the copy of the deed of August 25, 1925, shows that it was signed, "Amoskeag Company By /S/ Frederic C. Dumaine, Treasurer Approved: /S/ Frank P. Carpenter /S/ Alvah W. Sulloway Trustees." The confirmatory deed above referred to was signed by Frank P. Carpenter and eleven others, "Trustees of Amoskeag Company (formerly Amoskeag Manufacturing Company) as aforesaid, but not individually."

The declaration of trust of August 25, 1925, sets forth the names of the trustees of that association, none of whom, notwithstanding the similarity of some of their names, were trustees of the older trust.

Parkhill Manufacturing Company, on August 25, 1925, executed and delivered a deed to Amoskeag Manufacturing Company, the new organization under declaration of trust dated August 25, 1925.

Certificates representing beneficial interests under the new declaration of trust were issued, as follows:

(a) To the plaintiffs Carpenter et al., as trustees of said Amoskeag Company (formerly Amoskeag Manufacturing Company), certificates representing 330,000 common shares and 264,720 preferred shares of said new association or trust.

(b) To the plaintiff Parkhill Manufacturing Company, certificates representing 35,000 common shares and 20,280 preferred shares of said new association or trust.

The number of common shares and preferred shares so issued to the plaintiffs Carpenter et al. were based respectively upon the value of the manufacturing plant, mills, machinery, lands, and water rights so conveyed by them to the new trust, namely, $33,-000,000, and upon the value of all said other assets so conveyed by them, less obligations and liabilities, namely, a net value of $26,472,000. The agreed statement says that no consideration was received by said plaintiffs Carpenter et al. in this transaction unless such consideration is to be found as a matter of law in the transaction as described by the agreed statement of facts. Similar statements are made as to what was received by Parkhill Manufacturing Company in connection with this transaction.

There was comprised in the assets constituting the manufacturing plant, mills, machinery, lands, and water rights of said Amoskeag Company (formerly Amoskeag

Manufacturing Company) so conveyed, in respect of which the said common shares of said new trust were issued to the plaintiffs Carpenter et al., real estate, the value of which was taken for the purposes of said consolidation at $16,050,000, and the actual value of which did not exceed that amount. The other assets of said Amoskeag Company in respect of which the preferred shares of the new trust were issued to the plaintiffs Carpenter et al. included no real estate. It appears also that the plaintiff Parkhill Manufacturing Company received common shares for its manufacturing plant, mills, machinery, lands, and water rights, and preferred shares for other assets which did not include real estate.

The plaintiffs have taken all the steps necessary to enable them to maintain these actions, if the tax was one which ought not to have been collected. This depends, as above indicated, upon whether the transactions set forth involved a sale of lands, tenements, or other realty, so that the instruments of conveyance required the use of the stamps.

The plaintiffs urge that an association of this kind is not to be treated as a corporation, and that the beneficial certificates in the new association are not, for the purposes of these cases, to be treated as shares of stock. This contention seems to me entirely sound. The question whether the new trust is or is not a "corporation, joint stock company or association," for the purposes of capital stock tax or income and profits tax, within the meaning of section 2 (a) of the Revenue Act of 1924 (26 USCA § 1262), has nothing to do with the issue here presented. The plaintiffs' liability to the stamp taxes here sought to be recovered rests, as heretofore stated, upon whether there was a sale of land.

The plaintiffs also urge that an association like the Amoskeag Manufacturing Company is not a legal entity, separate and apart from its trustees and shareholders, and cite many cases in support of this view. The validity of this contention may, for the present purposes, be assumed. But this does not mean that no sale occurred.

The grantors and grantees were different persons, and no question as to the effect of a deed where some of the grantors are also named therein as grantees need be considered.

The trustees of the older trust held the legal title to the real estate, either as trustees or as agents for the shareholders. Wil-

liams v. Inhabitants of Milton, 215 Mass. 1, 102 N. E. 355. The grantees acquired the legal title as trustees, or, if the association is to be regarded as a partnership, as agents for the shareholders. There was, therefore, a conveyance or transfer of title from the grantors to the grantees. If this was done for a valuable consideration, there was a sale.

It is true, as urged by the plaintiffs, that, as provided in article 24 of regulations 55 (1924 Edition), "conveyances of realty, not in connection with a sale, to trustees or other persons, without consideration, are not taxable," and that article 48 of these regulations provides that conveyances to a trustee, without valuable consideration, are not subject to tax. It is clear that, where A conveys property to B in trust either for himself or for another, and nothing is paid for the conveyance, no sale is involved. This is not the situation which the cases at bar present. The trustees of the new trust were to issue, and in fact issued beneficial certificates to the grantors in each of these two cases, which beneficial certificates represented an interest in property other than that which was conveyed. There was a grant of realty for a consideration, and the grantors were bound to affix stamps to the instrument which conveyed the legal title.

The next question is as to the amount of the tax.

The plaintiffs urge that in each case the tax, at most, should have been based upon a fraction of the value of the realty. It is argued that, if "the Amoskeag Company (the trust of 1911) has in fact parted with more than the bare legal title to its property, since the new trustees now hold this property in small part for the Parkhill Manufacturing Company, and that the Parkhill Manufacturing Company has parted with nearly the entire beneficial interest in its property, since the new trustees hold it mostly for the Amoskeag Company, it is clear that what is taxable in the conveyance is at most only that proportion of the true beneficial interest in the real estate which has been in fact conveyed." While the validity of this contention is not free from doubt, there are certain considerations which make it impossible for me to adopt it. Each of the plaintiffs received beneficial certificates of so-called common shares in the new trust in return for their respective conveyances. These certificates represented a beneficial interest in the land conveyed by the particular deed, an interest in the land conveyed by the

other plaintiff, and something more. The beneficial certificates received by each plaintiff represented an important interest in the personal property, which was acquired in return for preferred shares so called. The shares which constituted the consideration for the conveyances were shares in other and different property than the realty conveyed, as such property included the property of both grantors, real and personal.

Under these circumstances, there is no practicable method of determining the amount of the stamp tax, except to look to the value of the beneficial certificates received for the conveyances, or to the value of the property conveyed. The agreed statement of facts fails to show that either the land conveyed or the consideration received therefor was worth less than the amount on which the tax was based.

Let judgment, in each case, be entered for the defendant.