**MT. PROSPECT BUILDING & LOAN ASS'N OF CITY OF NEWARK, N. J., et al. v. UNITED STATES.**

**No. 263.**

District Court, D. New Jersey.

March 20, 1940.

Stein & Stern, of Newark, N. J. (Milton B. Conford, of Newark, N. J., of counsel), for plaintiffs.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Fred J. Neuland, Sp. Assts. to Atty. Gen., and John J. Quinn, and Thorn Lord, both of Trenton, N. J., for the Government.

FORMAN, District Judge.

On June 22, 1933 an agreement of merger was entered into between the following corporations, being building and loan associations incorporated under the laws of the State of New Jersey: Mt. Prospect Building and Loan Association of the City of Newark, the Standard Building and Loan Association of the City of Newark, the Square Deal Building and Loan Association, the United Building and Loan Association of the City of Newark, the Globe Building and Loan Association of Newark, New Jersey, and the Ace Building and Loan Association.

This agreement in so far as the present controversy is concerned contemplated a segregation of desirable and undesirable assets of the associations forming the combination. The former were to be conveyed to the Mt. Prospect Building and Loan Association of the City of Newark as merged, and the latter were to be conveyed by each merging association to their respective trustees pursuant to the merger agreement for administration and liquidation, the merging associations receiving trust certificates in "exchange" or in "payment" for the property transferred. Provision was also made for the return by Mt. Prospect Building and Loan Association of the City of Newark as merged to the proper merging association of property originally considered desirable, but which had depreciated in value.

In so far as the individual shareholders of the merging associations are concerned the plan contemplated their interest should be the same in Mt. Prospect Building and Loan Association of the City of Newark as merged as was their interest in the merging association, and with reference to their interest in the undesirable property conveyed in trust the plan undertook to give them the same interest in the trust

estate as they had owned in the merging association.[1]

This action is for the recovery of the amount of six separate assessments of documentary stamp taxes, together with interest, assessed by the government against the several trust estates represented by the individual trustee-plaintiffs and against the

---

[1] The following sections of the merger agreement are material:

"13. Each Merging Association shall cause a separate Trust Estate, by appropriate indenture, to be created by a trust agreement in form to be approved by the Commissioner of Banking and Insurance of the State of New Jersey and by the Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged), to which Trust Estate each Merging Association will convey and/or assign all real estate, mortgages in process of foreclosure and all other mortgages and securities deemed undesirable by the Merger Committee, and the bonds and/or other securities accompanying the same, before the effective date of the merger. In the event any mortgage and/or other security deemed undesirable by the Merger Committee and assigned to the respective Trust Estate, is re-instated in good standing, then such mortgage and/or security shall be re-assigned to the Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged), and the amount thereof shall be credited by the Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged) against the liabilities and/or indebtednesses due it from the particular Trust Estate, or at its option to pay cash therefor. Each trust agreement shall provide that the Merging Association shall receive trust certificates representing the entire beneficial interest in said Trust Estate as payment for the real estate, mortgages and other assets so to be conveyed and/or assigned to said Trust Estate. Before such real estate and/or mortgages and/or other assets are conveyed and/or assigned to such Trust Estate, the value thereof as appears on the books of each Merging Association, shall be reduced by such amounts as may be agreed upon by the Merger Committee."

"15. The trust certificates to be received by each Merging Association shall be carried upon its books at the book value of the real estate and/or mortgages and/or other assets so to be conveyed and/or assigned to the Trust Estate, as of the date of such conveyance and/or assignment. Each Merging Association shall, before the effective date of the merger, declare a dividend out of the assets represented by such trust certificates whereupon the book value of the shares of the member of such Merging Association shall be proportionately reduced. The resolution declaring such dividend in the form of trust certificates, shall provide that all of such trust certificates shall be assigned to the Mt. Prospect Building and Loan Association of the City of Newark a corporation of New Jersey (as merged) and held by it as indemnity against any loss which it may suffer on any assets which it may receive from any of the Merging Associations. *The value of each member's certificate in each of the Merging Associations, as is then determined by the Public Accountants, and after declaring the dividend in the form of trust certificates as aforesaid, shall be the value of the member's share in the Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged), and such value of each member's share shall be certified on the books of the Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged) as dues, profits apportioned, statutory and contingent reserves and other reserves, in such proportions jointly or separately, as are estimated by the report of the Public Accountants, as aforesaid.*" (Italics supplied)

"18. If after the effective date of the merger, the Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged) acquires title to real estate as a result of foreclosure or otherwise, on a mortgage which, upon the date of the merger, was considered by the Merger Committee to possess sufficient security, it shall be lawful for the said Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged) to convey such real estate to the particular Trust Estate created by the particular Merging Association which assigned said mortgage to the Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged), and the purchase price of such conveyance to the Trust Estate as aforesaid, shall be secured by the bond and mortgage of the Trust Estate to the Mt. Prospect Building and Loan Association of the City of Newark, a corporation of New Jersey (as merged); and the agreement creating such Trust Estate shall make provision for such transaction."

Mt. Prospect Building and Loan Association of the City of Newark as merged, the assessments being based upon the transfer of realty.

The transactions taxed fall into two general categories: 1. Conveyances by the original merging associations to their respective trust estates in August, 1933, and 2. conveyances by the Mt. Prospect Building and Loan Association, as merged, of property foreclosed by said association or reacquired by deed from defaulting mortgagors, and then transferred back to the trust estates pursuant to the terms of the merger agreement.

The taxes were assessed under the following act of Congress: "8. Conveyances: Deed, instrument, or writing, delivered on or after the 15th day after the date of the enactment of the Revenue Act of 1932 and before July 1, 1934 (unless deposited in escrow before April 1, 1932), whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value of the interest or property conveyed, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale, exceeds $100 and does not exceed $500, 50 cents, and for each additional $500 or fractional part thereof, 50 cents. This subdivision shall not apply to any instrument or writing given to secure a debt." Revenue Act 1932, § 725, 47 Stat. 275, 26 U.S.C.A. Int.Rev.Acts.

The assessments have been paid and claim for refund has been made. This case comes up on plaintiffs' motion for judgment on the pleadings under Rule 12 of Civil Procedure, Rules, 28 U.S.C.A. following section 723c.

Carpenter v. White, D.C., 9 F.Supp. 391, affirmed, 1 Cir., 80 F.2d 145, certiorari denied 297 U.S. 720, 56 S.Ct. 598, 80 L.Ed. 1005, is the only case on the subject called to the attention of the court by counsel. Therein, the Amoskeag Company, a business trust, and the Parkhill Company, a corporation, both executed deeds of conveyances, including real and personal property, to the Amoskeag Manufacturing Company, a business trust. The trustees of the latter in exchange issued shares in agreed amounts to the two grantor firms, which shares were by them distributed to their original, respective shareholders. The question involved was whether the deeds were subject to a stamp tax under the same provisions of the Revenue Act as is herein involved. The taxpayers claimed that the deeds of conveyances were not in connection with a "sale" of the beneficial interest in the property conveyed, but merely a substitution of new trustees to manage the former trust and corporate property. To this argument the court stated: "The facts hardly support this argument. The old trust was not continued in the hands of new trustees; it was wiped out as to the property conveyed. A new trust was established to which the conveyances were made. The entire interest, legal and equitable, in the property of the Amoskeag Company was conveyed to the trustees of the new trust, and new equitable interests, not of identical character with the old ones, were created, evidenced by the shares in the new trust, issued to the grantors in return for the conveyance. There was therefore a complete change in both the legal title and the beneficial ownership of the property, not a continuance of the same beneficial ownership in the hands of new trustees. Nor were the equitable interests of the new shares in the same property as those of the old shares; the latter represented interests only in the property of the Amoskeag Company; the former, interests in all the property conveyed to the new trust." 80 F.2d 145, 146.

The difference between the situation involved in the case of Carpenter v. White, supra, and that presently before the court is apparent. In the case of Carpenter v. White, supra, shareholders in the Amoskeag Company received certificates representing a participating interest in property of the Parkhill Manufacturing Company as well as the Amoskeag Company, and vice versa. They received as pointed out by the court a different interest from that with which they parted. Hence, there was not a naked transfer from one group of representatives of the shareholders to another. In the present case, however, there is precisely that situation. The property conveyed to each of the trustees of the merging associations was held for the benefit of the associations from whence title came. The original interest in it was never upset.

Accordingly, we conclude that this distinction is controlling, and that plaintiff's motion for judgment must be granted.